AYLESWORTH, ADMINISTRATRIX, ET AL. *v.* AYLES-
WORTH ET AL.

[No. 22,918.   Filed October 6, 1915.   Rehearing denied December
9, 1915.]

1. TRUSTS.—*Contracts.*—*Construction.*—Where a father purchased
land taking title in himself pursuant to a contract between him-
self and children whereby the latter could contribute to the pur-
chase price and each child so contributing would acquire an in-
terest in the land in the proportion that the contribution would
bear to the original purchase price, and payments made by any
child were to be endorsed on the contract, and which provided that
as to any child not contributing "this partnership shall be null and
void," the father did not hold title in trust for the benefit of any
child that failed or refused to make any payment during his life-
time, but such contract merely conferred an option of acquiring an
interest in the land which would expire at his death, or sooner if
the aggregate payments by the children should equal the entire
purchase price; hence on the father's death owing $4,600 on the pur-
chase price of $11,000, toward which the only child contributing
had paid $4,000, the latter held an equitable interest to the extent
of such contribution and the decedent owned the remainder which
was subject to sale for the payment of the amount still owing by
him, and no interest in the land could be acquired by any of the
children through the payment or purchase of the outstanding notes
of decedent representing such indebtedness. p. 85.

2. CONTRACTS.—*Contruction.* — *Questions of Fact.* — *Partnership.* —
The question of the existence of a partnership is one of fact and is
not controlled by the phraseology of the scrivener designating the
relationship of the parties to an agreement as a partnership. p. 85.

From Porter Circuit Court; *A. D. Bartholomew*,
Judge.

Proceedings on the petition of Eliza J. Ayles-
worth, administratrix of the estate of John Ayles-
worth, deceased, for the sale of real estate to pay
debts. From the judgment rendered, the petitioner
and certain defendants appeal. (Transferred from
the Appellate Court under §1394 Burns 1914, Acts
1901 p. 565.)  *Reversed.*

*Crumpacker Bros., Daly & Freund* and *George C.
Gregg*, for appellants.

*W. E. Pinney*, for appellees.

MORRIS, J.—Appellant, Eliza J. Aylesworth, as administratrix of the estate of her deceased husband, John Aylesworth, petitioned the circuit court for an order to sell 120 acres of land to secure assets to pay debts. §2852 Burns 1914, §2336 R. S. 1881. Issues were formed, and hearing had before the court with special findings of fact and conclusions of law, and judgment for appellees. The error here assigned is based on the court's legal conclusions.

From the finding it appears that in November, 1906, decedent was the father of four adult children, viz., Carrie Casbon, Glen, Clarence and Clyde Aylesworth, and that the father and children then agreed orally that the father should purchase a 166-acre tract of land for $11,000, for which decedent was to pay $3,000 in cash, and to execute his eight notes for $1,000 each, one payable each year, with six per cent interest, and to secure the same by his mortgage on the land; it further provided that each child was given the privilege of paying to decedent, to be applied on the purchase price of the land, any sum of money desired, in which case such child should own an interest in the tract measured by the ratio of the sum paid to the original purchase price, but any child failing to make such payment should have no interest in the land. Thereupon the land was purchased, and the deed was executed to decedent conveying the title in fee simple, and he executed the notes and mortgage as provided by the agreement. Of the $3,000 cash payment made by decedent, appellant Clyde Aylesworth furnished $1,000. Shortly after the purchase decedent sold to a stranger, for $2,392, forty-six acres of the tract, and applied the proceeds on the $8,000, purchase-price debt. Subsequently, in December, 1909,

and September, 1910, Clyde paid his father the further sums of $1,250 and $750, respectively, which payments were applied on the purchase price of the land, and the father gave Clyde his personal notes for the respective amounts, as evidence of such payments. In May, 1911, the parties reduced their agreement to writing, which is as follows, omitting description:

"This agreement made and entered into this 12th day of May, 1911, by and between John Aylesworth, party of the first part, and Clarence Aylesworth, Clyde Aylesworth, Glen Aylesworth and Carrie Casbon, parties of the second part, witnesseth: That on the —— day of ————, in the year ————, the said John Aylesworth, party of the first part, and Clarence Aylesworth, Clyde Aylesworth, Carrie Casbon and Glen Aylesworth, parties of the second part, entered into a verbal agreement to purchase for the price of sixty-six dollars and fifty cents ($66.50) per acre the following described lands in Porter County in the State of Indiana, to wit: * * * , under and upon the following conditions, to wit: That the said John Aylesworth, party of the first part, should contract for and· purchase the said above described land for and at the said price of sixty-six dollars and fifty cents ($66.50) per acre. That a certain sum of money should be paid therefor in cash. That the said John Aylesworth, party of the first part, should execute his certain notes, secured by a mortgage upon the above described land, for the deferred payments thereon.

And it was further agreed by and between the parties hereto that there should be a partnership between each and all of the parties hereto, in and for the purchase of said land only, at the price hereinabove stated, and that said partnership should be and continue under and upon the following conditions, to wit: That the said Clarence Aylesworth, Carrie Casbon, Clyde

Aylesworth and Glen Aylesworth should make to the said John Aylesworth payments in cash from time to time, such sums as they might accumulate and see fit to pay toward extinguishing the indebtedness and make payment for said land; and that each of the said parties, Clarence Aylesworth, Clyde Aylesworth, Carrie Casbon and Glen Aylesworth, should be and become part owners of the said land at the said price above named, in proportion to the amount so paid upon said land by each of said parties herein named, and that in case of a dissolution of the partnership so established, or in case that one, either or all of said parties neglect or refuse payment of any sum whatever upon or toward the purchase price of said land, then in so far as that said party is concerned this partnership shall be null and void; but if each, any or all of the said parties, Clarence Aylesworth, Clyde Aylesworth Carrie Casbon or Glen Aylesworth, shall make payments from time to time, as hereinbefore stated and agreed upon, said payment shall be endorsed upon this contract and the amount of said payment shall be the value held by said partner in and to the fee simple of the real estate hereinabove mentioned. And it is mutually agreed by all the parties hereto that in the event of the sale of any of the lands hereinabove described, that the sale price, if more, shall be taken into consideration in the final settlement and adjustment of partnership, and if the sale price be less, the sale price shall be taken into consideration in the adjustment of said partnership and deduction made therefor accordingly. It is further agreed by the parties hereto that this contract and agreement shall be in full force and effect from and after the date of the purchase by the said John Aylesworth, party of the first part, from Labon Funk, the former owner of said lands, for the reason that there was a verbal contract existing between the parties hereto from and after the date of the pur-

chase of said lands, down to and including the 12th day of May, 1911. Witness our hands and seals this 12th day of May, 1911. John Aylesworth, Clarence Aylesworth, Carrie Casbon, Glen Aylesworth, Clyde Aylesworth.''

After the execution of the written contract, decedent endorsed on it the payments theretofore made by Clyde, aggregating $3,000. In October, 1911, Clyde made a further payment to his father of $1,000, for application on the purchase price of the land. This payment was likewise endorsed on the contract. Decedent died intestate in January, 1912, leaving surviving his widow and said four children as his only heirs. During his life no child, except Clyde (who paid in all $4,000), made any payment under the terms of the contract. At his death decedent owed no debts except $4,600, representing the balance due on the purchase price of the land. He left a personal estate sufficient to pay the widow's $500, statutory allowance and expenses of administration, and owned 308 acres of other land. In June, 1912, the son Clarence died intestate and solvent, leaving as his only heirs appellees Grace Aylesworth, his widow, and Carroll, Howard, Marguerite and Ida Aylesworth, minor children. In December, 1912, said Clyde paid to the vendor of the land the sum of $600 representing the balance due on one of the $1,000 purchase-money notes. In May, 1913, appellee, Grace Aylesworth, over the objection of Eliza Aylesworth, administratrix, paid to the holder of two of the $1,000 purchase-money notes the sum of $2,056, representing the principal and unpaid interest of the two notes and took an assignment thereof to herself and children. Afterwards in June, 1913, appellant, Clyde Aylesworth, paid the holder of the two remaining $1,000 purchase-money notes the sum of $2,000 and also

$56.00 for interest, and took an assignment there-of to himself. The value of the 120-acre tract in controversy is now $97.50 per acre. Shortly after the original purchase of the land the son, Clyde, moved on it and occupied it as his father's tenant until the latter's death, and paid crop rental therefor. Out of the rental the father paid the taxes on the land, interest on purchase-money notes, and paid to Clyde six per cent interest on the sums he had paid on the purchase price. The court further finds that the decedent was reimbursed for his payments made on the land with interest thereon, by the proceeds of the sale of the forty-six acres, the rentals, and the amounts paid to him by Clyde. It is also found that before the hearing Clyde Aylesworth, one of the appellants here, had purchased from his mother, sister and brother Glen their respective interests in the land.

The court concluded (1) that John Aylesworth took and held the title to the land in trust for his said four children; (2) that Clyde Aylesworth owns the undivided 66/86 of the land in fee simple as tenant in common with the heirs of Clarence Aylesworth, deceased, who own the remaining interest; (3) that the notes, of the face value of $4,600, taken up by Clyde and Grace, after decedent's death, do not represent any indebtedness against decedent's estate and should be cancelled; (4) that the petition to sell should be denied.

It is earnestly contended by appellants that the court erred in holding that John Aylesworth held title to the land in trust for the benefit of

1. any child that failed or refused to make any payment in his lifetime, and we are of the opinion that this contention must prevail.

2. No issue of fraud or mistake is tendered. No question is presented of reliance on a con-

struction of an ambiguous contract by the parties. The parties termed their contract one of partnership which would terminate with the death of one of the partners. However, it is true, as appellees' counsel contends, that the question of the existence of a partnership is one of fact, and is not controlled by the phraseology of the scrivener who wrote the agreement. The intention of the parties to this contract does not appear to us as obscure. The failure of any child to make any payment created no obligation on his part. Had the value of the land greatly depreciated it is manifest that neither decedent nor Clyde could have demanded contribution from those who did not elect to make any payment. The agreement contemplated that decedent should take title in fee simple, and pay the entire purchase price in cash and his notes, and that any one of the children might acquire an equitable interest in the land, measured by the original purchase price, by paying to the father such sum as he might desire; further provision was made for an equitable adjustment in case the father sold a portion of the tract. It was also provided that any payment made by a child should be endorsed on the contract, and this duty was performed by the father. In express terms the contract declares that as to any child failing or refusing to make any payment on the purchase price "this partnership shall be null and void." We are of the opinion that it was the intention of the parties, as evidenced by the contract, to confer on each child, during the father's lifetime, the privilege or option of acquiring an interest in the land by making payment on the purchase price thereof, and that this option should expire with the father's death or before that time if aggregate payments by the children should equal the entire purchase price. So

construing the contract Clyde Aylesworth owned the equitable title in 40/86 of the 120-acre tract, and decedent owned the remainder, at his death. The title of the latter was encumbered with a purchase-money debt of $4,600, and interest, to pay which the decedent's interest was liable to sale by the administratrix. In paying the holder of the two $1,000 notes the amount thereof, with interest, and taking an assignment thereof to herself and children, appellee Grace Aylesworth, neither for herself nor children, acquired any interest in the land.

In a lengthy brief, evincing painstaking research, the counsel for appellees has presented for our consideration many propositions and numerous authorities in support thereof. He particularly invokes the doctrine of especial favor shown family settlements by courts of equity. *Harvey* v. *Hand* (1911), 48 Ind. App. 392, 95 N. E. 1020. In view of our interpretation of the contract it is unnecessary to consider the many equitable doctrines presented by appellees' learned brief, for, as we view the question, Clarence Aylesworth, through whom appellees claim, was never, in John Aylesworth's lifetime, invested with any beneficial interest in the land. Judgment reversed, with instructions to restate the conclusions of law and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 109 N. E. 750. As to partnership as distinguished from joint adventure, see 115 Am. St. 407. See, also, under (1) 39 Cyc 113, 114, (2) 30 Cyc 360-363.