# RICKES v. RICKES.

[No. 11,443. Filed November 21, 1923. Rehearing denied March 30, 1924. Transfer denied June 4, 1924.]

1. TRUSTS.—*Resulting Trust.—When Arises.—Statutes.*—Notwithstanding the inhibition found in §4017 Burns 1914, §2974 R. S. 1881, a resulting trust arises, under §4019 Burns 1914, §2976 R. S. 1881, where it appears that by agreement and without any fraudulent intent, the party to whom the conveyance is made, or in whom the title vests, is to hold the same, or some interest therein, in trust for the party paying the purchase money or some part thereof. p. 538.

2. TRUSTS.—*Resulting Trust.—Must Arise at Time of Conveyance.—Payment of Purchase Money.*—Notwithstanding the rule that a resulting trust must arise, if at all, at the time of the execution of the conveyance, and that its existence must be determined from facts then existing, not from those occurring subsequently, the subsequent payment of a part of the purchase price in discharge of an absolute obligation incurred as a part of the original transaction is sufficient. p. 538.

3. TRUSTS.—*Resulting Trust.—Agreement to Hold in Trust.—Sufficiency.—Statute.*—An agreement by a mother with her son that if he would save his money and place it in her hands, she would take care of it, and it would come back to him when she died, followed by his contributing the greater part of the purchase price of two pieces of city property and a small farm, which were conveyed to his mother, sufficiently shows an acceptance of the proposition and the creation of a resulting trust under the last clause of §4019 Burns 1914, §2976 R. S. 1881. p. 539.

4. TRUSTS.—*Resulting Trust.—Agreement to Hold in Trust.—Form Immaterial.*—No particular form of words or character of evidence is essential to the creation of a resulting trust, and where the evidence clearly establishes the other essentials of such a trust, it will not be permitted to fail because of mere lack of form or method of proof. p. 539.

5. TRUSTS.—*Resulting Trust.—Agreement to Hold Property in Trust.—Family Agreements Favored.*—An agreement on the part of a mother to hold in trust for her son property purchased by him and conveyed to her, being in the nature of a family arrangement, is favored by courts of equity, and will be upheld if possible, where there is an attempt on the mother's part to repudiate the trust. p. 539.

6. TRUSTS.—*Resulting Trust.—Agreement to Hold Property in Trust.—When Not Testamentary.*—An agreement on the part of a mother with her son that if he would save his money and

place it in her hands, she would take care of .it, and it would come back to him when she died, was *held* not a testamentary promise in view of the laws of .descent which would have given one-third of· her property, at her death, to her surviving husband, and one-third. to another son.   p. 541.

7.   TRUSTS.—*Resulting Trust.—Agreement Which Is Basis of Trust.—When May Be Made.*—An agreement which is the basis of a resulting trust may be contemporaneous with the purchase and conveyance of the property to the trustee or it may be antecedent thereto, if it is, in fact, a part of the transaction involved.   p. 542.

8.   TRUSTS.—*Resulting Trust.—Sale of Trust Property.—Cestui que Trust May Follow Proceeds.*—Where property held under a resulting trust has been sold without the consent of the *cestui que trust,* and the proceeds invested in other property, the *cestui que trust* may follow the funds derived from the sale and have a trust decreed in his favor in any property in the hands of the trustee purchased therewith.   p. 543.

9.   TRUSTS.—*Resulting Trust.—Action to Enforce.—Repudiation of Trust.—Statute of Limitation.*—Where the trustee has sold the real estate held under a resulting trust without the consent of the *cestui que trust,* and taken the proceeds and invested them in other real estate, which she had conveyed to her and her husband by entireties, so that, on the death of the husband, the full legal title vested in her, and she has indicated a purpose that a portion of the property should go to another, it is unnecessary for the *cestui que trust* to await her death before bringing action to have the trust enforced; in fact, with knowledge of such disavowal of the trust, he must assert his rights within the period prescribed by the statute of limitations or suffer a loss of all interest in the property by reason of the trust in his .favor.   p. 543.

10.   LIMITATION OF ACTIONS.—*Enforcement of Trusts.—Disavowal of Trust.*—Where a trustee has disavowed the trust, the *cestui que trust,* having knowledge of such disavowal, must assert his rights within the period of limitation thereafter.   p. 543.

From Marion Circuit Court (32,880) ; *Harry O. Chamberlain,* Judge.

Action by George H. Rickes against Sophie Rickes to have a trust declared in certain property.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*Frederick E. Matson, Solon J. Carter, James A. Ross, Robert D. McCord, Adolph A. Schreiber* and *Austin V. Clifford,* for appellant.

*Pickens, Moores, Davidson & Pickens,* for appellant.

BATMAN, J.—This is an action by appellee to have a trust declared in his favor in certain real estate and personal property, the legal title to which is in appellant. On the trial of the cause, the court found in appellee's favor as to the real estate, but against him as to the personal property, and adjudged that appellee was the owner of the real estate in fee simple, subject to the life estate of appellant therein. Appellant filed a motion to modify the judgment, and also a motion for a new trial, each of which was overruled. In this appeal, it is alleged that the court erred in each of said rulings.

Appellant challenges the sufficiency of the evidence to sustain the decision on which the judgment is based. An examination of the record discloses substantial evidence tending to show the following facts: In the year 1900, appellant was living with her husband and two sons in property on Prospect street in the city of Indianapolis, which she had purchased some years before for $900, and on which, there was an unsatisfied mortgage to secure $700 of the purchase price. Appellee was one of the two sons who composed the family. He was in business for himself as a plumber, and had accumulated some money. When the interest on said indebtedness became due in the year mentioned, appellee offered to procure a release of the mortgage by paying the entire amount secured thereby. Appellant gave her consent, and stated to appellee, in substance: If you will save your money, and place it in my hands, I will take care of it, and it will come back to you when I die. Then you will not have to work and depend on someone else

like your father.   Following this promise, appellee paid the indebtedness secured by the mortgage.   In about a year thereafter, he purchased a house and lot on Pleasant street in said city for $2,000, and, without any fraudulent intent, had the same deeded to appellant. He paid $1,200 of the purchase price with his own money at the time the property was acquired, and assumed the payment of an $800 mortgage.   Afterwards he spent several hundred dollars of his own money in making improvements thereon.   Some time afterwards, the Prospect street property was sold for $1,250.   Of this amount, $850 was used in paying an agent's commission for making the sale, and in discharging the mortgage indebtedness on the Pleasant street property.   The remainder was used in making improvements thereon.   In 1904 appellee purchased a small farm near said city for $2,300, and, without any fraudulent intent, had the same deeded to appellant. He paid $1,500 of the purchase price in cash with his own money, and a mortgage was placed thereon to secure the remaining $800.   About a year afterwards, the Pleasant street property was sold for $3,000.   Of this amount, $800 was used in discharging the mortgage on the farm, and the remainder, together with other money furnished by him, was used in making improvements thereon, and in buying stock and machinery to be used in connection therewith.   The house on the farm burned, and appellee collected $800 fire insurance thereon.   This amount, together with a few thousand dollars additional, furnished by appellee, was used in rebuilding the house.   In 1914, appellant and her husband, without the consent of appellee, sold the farm for $15,000.   They invested the proceeds from such sale in the real estate involved in this action, the title to which was taken in the name of appellant and her husband as tenants by the entirety, and also in stocks, bonds and

savings account, one-half to each.   The face value of
the personal property so acquired amounts to $7,057.92,
which   has   an   estimated   value,   as   stipulated,   of
$5,656.82.    After  the  sale  of  the  farm,  appellee  re-
quested appellant to make some legal arrangement
whereby the property which he had placed in her hands
would come back to him when she died, as they had
agreed, and as he expressed it, "so there would be no
argument about it."   Appellant made a positive re-
fusal of this request, saying that "she wanted to divide
the money equally."   Prior to the trial of the cause,
appellant's husband had died, leaving appellee and his
brother as her sole heirs at law.    In addition to the
foregoing, there is substantial evidence tending strongly
to show, either directly or by reasonable inference, the
following further facts, which throw light upon the re-
lations of the parties, and the several transactions in-
volved:   The husband of appellant and the father of
appellee was given to strong drink, and, as a conse-
quence, was frequently unemployed.   While he contrib-
uted something toward the support of the family during
the years, he never accumulated any property.   Appel-
lant was a good wife and mother, patient with her
husband's faults, and industrious in caring for her fam-
ily, but without opportunity to earn much to lay aside
for the "rainy day."   During the first twenty years
of their married life, which covered appellee's youth
and early manhood, they were in limited circumstances,
financially, having only acquired an equity of $200 in
a piece of property costing $900, outside of their house-
hold effects.   Appellee began early in life to aid the
family by contributing his earnings, but it was only
after he had learned a trade, entered business on his
own account, and was earning from $3,000 to $7,000
annually, that the affairs of the family were changed
for  the  better  in  a  substantial  way.    Appellant's

younger son was of little aid in promoting the affairs of the family, and contributed but little more than was required for his own subsistence.

It will be observed that the legal title to the real estate involved in this action is in appellant. In order to determine her interest therein, we must con-

1, 2. sider the origin of the fund from which the purchase price was paid. Accepting the facts stated above as true, as we may rightfully do under the evidence, it is clear that such fund had its origin in the amounts contributed by appellee in the purchase and improvement of the Pleasant street property, and the small farm near Indianapolis. We shall first consider whether a trust was created in favor of appellee in the Pleasant street property, under the facts stated. In considering this question, we should bear in mind that a resulting trust will arise in this state notwithstanding the inhibition found in §4017 Burns 1914, §2974 R. S. 1881, where it appears that, by agreement and without any fraudulent intent, the party to whom the conveyance is made, or in whom the title vests, is to hold the same, or some interest therein, in trust for the party paying the purchase money, or some part thereof, as provided in §4019 Burns 1914, §2976 R. S. 1881. It appears that appellee purchased the Pleasant street property, and, without any fraudulent intent, caused it to be conveyed to appellant. It further appears that he paid the purchase money therefor. True, he only paid $1,500 thereof when the conveyance was made, but we are of the opinion that it sufficiently appears that he subsequently paid the remaining $800 in discharge of an absolute obligation incurred by him as a part of the original transaction of purchase. This was sufficient as regards the payment of the purchase money. 3 Pomeroy's Equity Jurisp. §1037; 39 Cyc 130; 26 R. C. L. 1224; Bibb v. Hunter (1885), 79 Ala. 351;

*Yetman* v. *Hedgeman* (1913), 82 N. J. Eq. 221, 88 Atl. 207; *DeRoboam* v. *Schmidtlin* (1907), 50 Ore. 388, 92 Pac. 1082; *Kauffman* v. *Kauffman* (1920), 266 Pa. 270, 109 Atl. 640. In reaching this conclusion, we have not attached any importance to the fact that said deferred payment of $800 was made from proceeds derived from the sale of appellant's Prospect street property, as a resulting trust must arise, if at all, at the time of the execution of the conveyance. *Toney* v. *Wendling* (1894), 138 Ind. 228; *Scott* v. *Dilley* (1913), 53 Ind. App. 100. Its existence, therefore, must be determined from the facts then present, and not from those occurring subsequently. 39 Cyc 128. If the facts in existence at the time appellant acquired title to the Pleasant street property gave rise to a resulting trust therein in appellee's favor, it is clear that the fact, as to the source of the fund from which such deferred payment was made, would not have the effect of dissolving such trust, and thereby deprive appellee of his equitable title to such property. If, however, the source of such fund was a proper matter for consideration in this connection, the further fact that appellee, under an agreement with appellant, had discharged out of his accumulated earnings, about a year prior thereto, a mortgage of $700 on said Prospect street property, would not be overlooked in the adjustment of existing equities.

Having determined that appellee paid the purchase money for the Pleasant street property in such manner as to bring him within that provision of said 3-5. §4019 Burns 1914, *supra,* cited above, it only remains to be determined whether there was such an agreement in existence between the parties thereto, with reference to such property, as to give rise to a resulting trust therein in favor of appellee. It will be observed that the evidence warrants a finding that

about a year prior to the purchase of the Pleasant street property, appellant stated to appellee, in substance: If you will save your money, and place it in my hands, I will take care of it, and it will come back to you when I die. Then you will not have to work and depend on someone else like your father. The evidence does not disclose a formal acceptance of this offer, but none was necessary to make it a binding agreement, if it was, in fact, accepted by appellee, and appellant so understood. On the trial of the cause, appellee, in referring to the property he had placed in appellant's hands, made the following statements, in substance: I did not know how much I would own. Whatever I placed in her hands would come back to me. That was my understanding with her, and that is what I worked on. Mother said what I gave her would come back to me. I trusted her and she knows it. I trusted her above everything. But, aside from any direct evidence, the fact that appellee, with limited means, placed so much property in appellant's hands without any other explanation, affords a strong circumstance indicating an acceptance, in the light of human experience. And with such an offer by appellant outstanding, there is no reasonable basis for belief on her part that appellee was placing such a large amount of property in her hands as a gratuity, rather than in pursuance of an acceptance of such offer. The agreement thus made is not as formal, or as well evidenced, as would have been advisable, but it is none the less effective, as no particular form of words, or character of evidence is essential. *Taber* v. *Zehner* (1911), 47 Ind. App. 165; *Camp* v. *Camp* (1913), 52 Ind. App. 250; *Koehler* v. *Koehler* (1919), 75 Ind. App. 510. It was no doubt unwise on the part of appellee, as disclosed by subsequent events, not to have required a more formal agreement, evidenced by a writing, but this lack of wisdom on his part

will not defeat the trust. *Koehler* v. *Koehler, supra.* In this connection, it should be borne in mind, that this is not an agreement between strangers, but between mother and son, with mutual affection and confidence, and of evident limited experience in business affairs. The agreement is neither unnatural nor unreasonable, and, being in the nature of a family arrangement, belongs to that class which courts of equity consider with favor. *Harvey* v. *Hand* (1911), 48 Ind. App. 392; *Aylesworth* v. *Aylesworth* (1915), 184 Ind. 80; *Koehler* v. *Koehler, supra.* The trust, therefore, should not be permitted to fail because of a mere lack of form, or method of proof, respecting the agreement, since the evidence clearly and unequivocally establishes the other essentials for the creation of the alleged trust. *Hartley* v. *Hartley* (1917), 279 Ill. 593, 117 N. E. 69.

Appellant contends that if such an offer was made and accepted, it would not constitute an agreement to hold any property in trust for appellee, as it is 6. merely a testamentary promise on her part. We cannot concur in this contention. There is no semblance of a promise on the part of appellant to reimburse appellee through a testamentary bequest, and the laws of this state regulating the descent of property from a woman who leaves surviving her a husband and children are so generally known, even by laymen with limited experience, that we cannot assume that appellant believed that if appellee saved his money, and gave it to her absolutely, that he would retake it all at her death through inheritance, regardless of the survival of his father and brother, and thereby effect a fulfillment of her promise. It is clear to us, that the parties intended that appellant should hold the property placed in her hands by appellee pursuant to such promise in such manner that all of it, and not merely a part of it, would go back to him at her death. This

could only be accomplished, with any reasonable degree of certainty, through the creation of a trust in appellee's favor, and the trial court, therefore, was warranted in assuming that the parties so intended, since there is nothing to require a contrary conclusion.

Our attention has been called to the fact that the agreement under consideration, if made, was entered into when the payment of the mortgage on the Prospect street property was being discussed, which was long after the purchase of such property, and long before any of the other property was acquired. It is not claimed that the payment of the mortgage created a trust in favor of appellee in the property which it covered. Nor can it be successfully contended that such payment closed the transaction contemplated in said agreement. Its very nature requires us to assume that the parties intended that it should cover matters transpiring through a period of years. Therefore, the fact that it was made long prior to the purchase of any particular piece of property does not militate against its effectiveness as an element in the creation of a trust. Such an agreement may be contemporaneous with the purchase and conveyance, or it may be antecedent. In either event, it suffices if it is, in fact, a part of the transaction involved—a fact that must be determined, not from its nearness or remoteness in point of time, but from its logical relation to the subject matter. *Excelsior Clay Works* v. *De-Camp* (1906), 40 Ind. App. 26; *First Nat. Bank* v. *Wisdom* (1901), 111 Ky. 135, 63 S. W. 461; *Fraley* v. *Fraley* (1909), 150 N. C. 501, 64 S. E. 381. In the instant case, the evidence warrants a conclusion that the agreement in question was an essential part of the transaction through which appellant acquired the legal title to the Pleasant street property, and hence its remoteness, as an antecedent fact, has no significance.

In this connection, we may add, that we will deem the complaint amended to conform to the proof as to the time of making such agreement, and thereby meet appellant's objection that the evidence does not sustain the allegation of the complaint in that regard.

It is evident that what we have said regarding the purchase of the Pleasant street property applies with equal force, under the facts stated, to the subsequent purchase of the farm near Indianapolis. Therefore, we deem it unnecessary to enter into a discussion of the facts connected with that transaction, in explanation of our conclusion that the trial court was fully warranted in finding that appellant held the legal title to each of said pieces of property, subject to a trust in favor of appellee. It will be observed that appellant and her husband, without the consent of appellee, sold the latter piece of property (the farm) which she held in trust for appellee, and invested a part of the proceeds derived therefrom in the purchase of the real estate involved in this action, taking title in such form that appellant has acquired the full legal title thereto, through the death of her husband. Since appellant held the farm in trust for appellee, it follows that the funds derived from its sale were impressed with the same trust, although sold without the latter's consent. This being true, appellee has the right to follow the fund, and have a trust decreed in his favor in any property in the hands of appellant purchased therewith. *Windstanley* v. *Second Nat. Bank* (1895), 13 Ind. App. 544; *Shopert* v. *Indiana Nat. Bank* (1908), 41 Ind. App. 474; *Ray* v. *Ferrell* (1891), 127 Ind. 570; *Pearce* v. *Dill* (1897), 149 Ind. 136. It was not necessary for him to await appellant's death before doing this, as there is evidence to support a finding that she had repudiated her trust, in this, that she had not only refused to give evidence of its existence when requested so to do by

appellee, but had indicated a purpose that a portion of the property should go to another, and had caused the title to the real estate, purchased from the trust funds derived from the sale of the farm, to be so taken that the full legal title thereto would be acquired by her husband, in the event he survived her—a thing not contemplated in the establishment of the trust. This is clearly sufficient to warrant a finding of disavowal, since such fact may be proved by circumstances. *Scott* v. *Dilley, supra; Buckel* v. *Auer* (1918), 68 Ind. App. 320. With such knowledge, it was incumbent upon appellee to assert his rights in a court of equity within the period prescribed by the statute of limitations, or suffer a loss of all interest in the property by reason of the trust in his favor. *Ward* v. *Harvey, Admr.* (1887), 111 Ind. 471; *Thomas, Admr.,* v. *Merry* (1888), 113 Ind. 83; *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636; *Hitchcock* v. *Cosper* (1905), 164 Ind. 633; *Buckel* v. *Auer, supra.*

Our attention has been called to the fact that the trial court refused to decree a trust in favor of appellee in the personal property in question, although it was acquired with a part of the same fund used in purchasing the real estate, and also to the fact that appellant was decreed to have a life estate in the latter. This, it is claimed, is inconsistent with the theory of a trust, as asserted by appellee. It suffices to say, in answer to this contention, that we need not determine whether the decree is more favorable to appellant than the facts warrant, as appellee has not made any complaint in that regard. For the reasons stated, we conclude that the court did not commit reversible error in overruling either of the motions on which the assignment of error is based.

Judgment affirmed.