**WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. PLYMOUTH MFG. CORPORATION et al.**

**No. 8235.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 3, 1943.

Rehearing Denied Jan. 3, 1944.

Wm. L. Tyson, Irving J. Levy, Bessie Margolin, Morton Liftin, Faye Blackburn, and Herman Marx, Attys., United States Department of Labor, all of Washington, D. C., and Frank J. Delany, Regional Atty. of Chicago, Ill., for appellant.

Albert B. Chipman, of Plymouth, Ind., and Walter R. Arnold and Arnold, Degnan, Goheen & Zimmerman, all of South Bend, Ind., for appellees.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The plaintiff, as Administrator of the Wage and Hour Division of the United States Department of Labor, filed a complaint in the District Court for the Northern District of Indiana alleging that the Plymouth Manufacturing Corporation, an Indiana corporation, and Hubert Tanner, William H. Wolfarth, George E. Warren, and Chester H. Thompson, partners doing business as the Plymouth Manufacturing Company, and Hubert Tanner and Samuel Tomlinson, were engaged at various times after the effective date of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., in the manufacture of goods for interstate commerce, and in the sale, transportation, shipment, and delivery of goods for interstate commerce; and that during said times they paid wages below the standards of the Act, and worked the employees hours in excess of the standards of the Act without paying them for the overtime at time and one-half. The plaintiff prayed for an injunction against the defendants.

After an extensive hearing, the trial court made and filed its findings of fact and stated its conclusions of law thereon, in accordance with the requirements of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The court found that since October 22, 1938, the Plymouth Manufacturing Corporation had not employed any person or persons except its executive officers, and that it was not engaged in any business except to perform the terms of a certain lease hereinafter mentioned; that at no time since October 22, 1938, was the defendant Samuel Tomlinson an employer, nor did he stand in the relationship of master or entrepreneur to any of the workers; that Hubert Tanner, William H. Wolfarth, George E. Warren, and Chester H. Thompson did not separately constitute a partnership doing business as the Plymouth Manufacturing Company, but they, with all the workers enumerated in the schedule filed, numbering less than one hundred, were engaged as partners in doing business as the Plymouth Manufacturing Company; that the defendants Tanner, Wolfarth, Warren, and Thompson, together with the workers, all of whom had signed a partnership agreement, were partners; and all of the work the workers performed and the services they rendered were as partners for the partnership, and not as employees of the partnership nor of any of the defendants; and that the operation and conduct of the business and the division of the profits had been carried on in substantial conformity with the partnership agreement.

Upon these findings, the court stated its conclusions that since October 22, 1938, none of the defendants had engaged in interstate commerce, except the co-partnership consisting of all of the members set forth in the findings as doing business under the name of the Plymouth Manufacturing Company; and that no employees of the said Company nor any of the defendants had been employed in violation of the Fair Labor Standards Act. Upon these findings and conclusions, the District Court denied the injunction prayed for by the plaintiff. From such judgment, this appeal was taken.

■ The question presented to us is: Were these workers employees of the defendants or of any of them? Under Rule 52(a), supra, we are not authorized to set aside the findings and conclusions of the trial court unless they are clearly erroneous, and due regard must be given to the opportunity which the trial court had to pass upon the credibility of the witnesses. We do not weigh the evidence here, and unless it clearly appears that the findings and conclusions of the trial court are erroneous, we are bound by them.

■ First, was the Plymouth Manufacturing Corporation after October 22, 1938, the employer of anybody except its executive officers? The evidence showed that on October 10, 1938, the Corporation was engaged in the manufacture of boxes and baskets in a factory owned and operated by the Corporation in the rural community of Plymouth, Indiana. Its total employees were less than one hundred. The Corporation had not made any profit for the past several years. The president and owner of the great majority of its capital stock was the defendant Samuel Tomlinson. His son-in-law, the defendant Hubert Tanner, an officer of the Company, and the defendants Wolfarth, Warren, and Thompson were on the Corporation's Board of Directors. The Corporation was afraid that it could not operate and meet the standards of the Fair Labor Standards Act, so it decided to lease its plant to Tanner, Wolfarth, Warren, and Thompson, which it accordingly did on October 10, 1938.

The lease covered the plant, equipment, and material on hand; in fact, everything except the cash on hand and the accounts

receivable was included. The lease was terminable by either party on thirty days' notice. The lessees were to pay all taxes and insurance and maintain the repairs on the buildings and equipment, and to pay as rent a sum equal to seventy per cent of the net profits of the Company. The Corporation agreed on its part to use reasonable and prudent means to provide funds which the lessees might borrow by paying six per cent interest. The lessees agreed to set up a reserve fund to be expended only as the Corporation and the lessees acting in concert might agree. Upon termination of the lease, all the property was to revert to the Corporation. Subsequently, the lease was modified to provide a rental of five per cent of the gross sales of commodities or merchandise fabricated on the premises. Upon termination of the lease, the property on hand was to be purchased by the lessor at its full appraised value.

The lessees and the sublessee, Plymouth Manufacturing Company, went into possession and operated the plant after October 22, 1938. There is no evidence that after it entered into this lease the defendant Corporation had anything to do with the manufacturing business it had formerly conducted. It existed only to perform its part of the lease. Indeed, at the time this suit was filed, the Corporation was in the process of dissolution. There was no evidence of any connection between the Corporation and the business that continued except that of lessor and lessee of the premises upon which the Corporation had theretofore conducted the manufacturing business which was now conducted by the Plymouth Manufacturing Company, and the fact that the Company had become heavily indebted to the Corporation. True, the former officers and directors of the Corporation, except the president, Tomlinson, were engaged in the new enterprise. They were not engaged, however, as officers of the Corporation.

In making its State property tax return throughout the greater portion of the period under consideration, the Corporation returned as its property the raw materials, goods in process, and manufactured articles on hand which were used by the Company. While this is slight evidence that the Corporation was the real operator, we do not think it compelled the court to reach that conclusion in the face of all the other evidence that the Corporation was not engaged in the manufacturing business after October 22, 1938.

In view of these facts, we do not think the District Court's finding that the Corporation was not an employer is clearly erroneous.

■ Samuel Tomlinson was the president of the Plymouth Manufacturing Corporation. He owned practically all of the stock of that Corporation. After the leasing of the premises, he had nothing to do with the manufacture of the boxes and baskets. He employed no one. As the president of the landlord, he had a vital interest in seeing that the enterprise under the tenant Plymouth Manufacturing Company prospered. He often gave the benefit of his advice and counsel, and he assumed to speak on at least one or two occasions to the workers of the Company in an authoritative way. His conduct and position were that of one with influence and interest but not of one with authority. New Albany Forge & Rolling Mill v. Cooper, 131 Ind. 363, 30 N.E. 294; Petzold v. McGregor, 92 Ind.App. 528, 176 N.E. 640. When the Company got into financial difficulties and was owing the bank $27,000 on its past due notes, which amount was guaranteed by Tomlinson, and the Company was owing the Corporation over $38,-000, Tomlinson was hired by the Company at the nominal salary of $25 a week to look after its finances. He was an employee of the Company, and not an employer. The court's finding to this effect was not clearly erroneous, but instead was clearly correct. We find nothing in the record to indicate that Tomlinson was an individual employer of anyone.

■ Although the court made no finding as to Tanner, the failure to make a finding concerning him was equivalent to a finding that he was not an employer. We find no evidence in the record that Tanner was an employer.

This brings us to a consideration of the question as to whether the workers in this plant were employees of Tanner, Wolfarth, Warren, and Thompson as partners doing business as the Plymouth Manufacturing Company.

■ Whether the relationship existing between the partners amounted to a partnership is a question of fact to be determined by consideration of all the circumstances surrounding the parties. Aylesworth v. Aylesworth, 184 Ind. 80, 109 N.E. 750.

On October 10, 1938, when the Plymouth Manufacturing Corporation first entered into a lease agreement with the defendants Tanner, Wolfarth, Warren, and Thompson, the parties lessor and lessees as between themselves created the relationship of landlord and tenant. The lessees were tenants in common of the leasehold interest, and as such they proceeded to enter into so-called articles of partnership with the workers to engage in the business of manufacturing and selling boxes and baskets under the firm name of the Plymouth Manufacturing Company; the lessees sublet the premises and the property leased from the Plymouth Manufacturing Corporation to the Plymouth Manufacturing Company; and the latter assumed the obligations of the lease and was to receive the benefits thereof.

The four lessees, or tenants in common of the leasehold, after the subletting of the property to the Plymouth Manufacturing Company joined with the workers in what they termed a partnership agreement. The four lessees in the so-called partnership agreement were at first known as the senior partners. The workers in the plant generally were termed junior partners. The workers and the senior partners performed very much the same tasks and services for the Plymouth Manufacturing Company as they had performed for the Plymouth Manufacturing Corporation. The management of the Company's affairs was in the hands of the senior partners, who could take in new partners or let out old ones. The junior partners were to receive a drawing account based upon their contributions in labor or services, which were to be evaluated by the senior partners. Each junior partner's drawing account was determined by multiplying his hours of work by a sum per hour, which hourly rate was fixed by the senior partners. Ten per cent of the net profits was to be divided among the junior partners in the same proportion that their drawing accounts bore to the total amount drawn. The workers punched the time clock. The drawing account of each senior partner was fixed on a basis equivalent to his salary with the Corporation, plus the right to an additional amount equal to two and one-half per cent of the net profits. The junior partners could not inaugurate dissolution proceedings, but the senior partners could do so upon thirty days' notice to each member of the partnership.

On November 7, 1939, the senior partners and the junior partners amended their articles of agreement, and this amended agreement was in force at the time the suit in question was filed. By this amendment, all distinction between senior and junior partners was eliminated, and in place of the senior partners in the position as managers of the affairs of the Company, there was provided a board of control to be elected for staggered terms, one each six months, by a majority vote of all of the partners and from among the partners.

There was also provided an adjustment committee of five to be elected in the same manner as the board of control. The adjustment committee was a grievance committee. The articles provided for a distribution of the profits. The ten per cent set aside for the so-called senior partners was eliminated. It was provided that on dissolution, after payment of all debts of the firm, the balance was to be prorated among the firm members on the same basis as profits were to be distributed. On the withdrawal of any partner from the firm, an accounting was to be made with him by the board of control within thirty days after the end of the quarter in which the member severed his connection with the firm, payments were to be made to him for his share of the excess profits on the same basis as with the remaining partners, and such settlement disposed of all of his interest in the firm property. This was so whether he withdrew from the firm voluntarily or involuntarily. A partner's interest could not be assigned without the unanimous consent of the board of control. In the event of the death or disability exceeding thirty days of a partner, settlement would be made by the board of control with his estate or with him, precisely in the manner it would have been effected if the deceased or disabled partner had withdrawn from the firm at the time of his death or disability exceeding thirty days. The partnership agreement stipulated for the subleasing for and on behalf of the partnership of the factory premises and the property which had been leased from the Plymouth Manufacturing Corporation.

No fraud or duress was practiced upon any member to get him to sign the agreements, but he was made to understand that the plant could operate under this cooperative plan or partnership arrangement, or it would close. The plant did operate after the execution of this so-called part-

nership agreement and did pay the drawing accounts and did earn and have for distribution some profits, which were distributed. in accordance with the articles of partnership. The plaintiff observes these were in small amounts, such as might have been handed out as bonuses. However, they were not bonuses. A bonus is a gratuity to which the recipient has no right to make a demand. A distribution of the profits earned in a partnership or cooperative effort gives rise to legal rights among the partners.

There was also in evidence before the District Court a copy of a judgment roll of the Circuit Court of Marshall County, Indiana, from which it appeared that two of the members of the cooperative enterprise had sued the board of control of the Plymouth Manufacturing Company to enjoin it from paying any taxes or contributions to the Unemployment Compensation Division of the Department of the Treasury of the State of Indiana upon the parties to the Company as employees thereof. The court held that the parties to the enterprise doing business as the Plymouth Manufacturing Company were copartners and not employees and enjoined the board of control of the Company from paying any of the compensation funds to the Unemployment Compensation Division of the Indiana Department of the Treasury. The Supreme Court of Indiana dismissed on the ground that the declaratory judgment was an improper remedy.

The District Court had all of these facts before it and heard the numerous witnesses whose interests were involved and whose good faith and intentions were to be considered. It found that there was no partnership of Tanner, Wolfarth, Warren, and Thompson doing business as the Plymouth Manufacturing Company, but that there was a partnership of these four .and all the workers in the manufacturing company who were engaged as partners under the name of the Plymouth Manufacturing Company; and that the workers were engaged in the business of manufacturing boxes and baskets as members of this partnership, and not as .employees employed by anyone.

Whether or not there was a partnership created here by these parties is a question of their intentions. Shrum, Adm'x v. Simpson, 155 Ind. 160, 57 N.E. 708, 49 L.R.A. 792.

One of the standard tests of whether or not a partnership relation is created is whether or not all the parties agree to share in the profits. Kamm & Schellinger Co. v. Likes, 93 Ind.App. 598, 179 N.E. 23; Steele v. Michigan Buggy Co., 50 Ind.App. 635, 95 N.E. 435. There was no evidence that just Tanner, Wolfarth, Warren, and Thompson shared in the profits. Before the suit was filed in the case at bar, Tanner, Wolfarth, Warren, and Thompson enjoyed advantages in the profit-sharing which they did not enjoy under the agreement in force at the time suit was brought. There was never a time when they did not share the profits with all the parties to the so-called partnership agreement. There was never a time when these four alone shared the profits. We cannot say the District Court's finding that there was no partnership of Tanner, Wolfarth, Warren, and Thompson is clearly erroneous.

The District Court went further and found not only that there was no partnership composed of Tanner, Wolfarth, Warren, and Thompson doing business as the Plymouth Manufacturing Company, but that these four parties with some seventy-five to one hundred other workers who signed the partnership agreement and engaged in the enterprise, were "partners of the partnership known as Plymouth Manufacturing Company," and all the work performed by the workers was performed as partners of said partnership and not as employees of the said partnership or of any of the defendants individually. We do not decide whether the enterprise operating the plant at the time this suit was filed was a partnership composed of all the parties who signed the so-called partnership agreement. Since a partnership of this kind is not sued in the complaint and is not before the court, we do not pass upon the existence of such larger partnership, or whether, admitting the existence of such a partnership, the workers were employees and the partnership was employer within the meaning of the Fair Labor Standards Act, notwithstanding it was a partnership.

The District Court saw and heard the witnesses, and, on the whole, we cannot say that its findings were clearly erroneous. With such findings supported by the record and the procedure in such cases, the court's conclusion that the plaintiff was not entitled to an injunction was proper. The judgment is affirmed.