PORTER, Price Administrator, v. FEDERATED MEAT CORPORATION et al.

No. 190, Docket No. 20084.

Circuit Court of Appeals, Second Circuit.

Sept. 12, 1946.

---

[11] See 28 U.S.C.A. § 455.

George Moncharsh, Deputy Administrator for Enforcement, Milton Klien, Director, Litigation Division, David London, Chief, Appellate Branch, and Samuel Rosenwein, Atty., all of Office of Price Administration, all of Washington, D. C., and Kenneth V. Fisher, Regional Litigation Atty., Office of Price Administration, of New York City, for plaintiff-appellee.

Max L. Finkelstein and Jack Kranis, both of New York City (Meyer Kreeger, of New York City, of counsel), for defendants-appellants.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is an appeal by the defendants in a suit brought in the District Court for the Eastern District by the Price Administrator from an order restraining them pendente lite from violating Revised Maximum Price Regulation No. 169, as amended, which was issued by the Price Administrator pursuant to the provisions of the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq. The temporary injunction was granted following a hearing on an order to show cause supported by affidavit to which countervailing affidavits were filed.

There is no substantial dispute as to the following facts: On December 27, 1944, the defendant Federated Meat Corporation was organized under the laws of New York with its principal place of business in Brooklyn, N. Y., to engage in the business of slaughtering and selling meat to retailer dealers in that commodity. Its organization was the result of a plan conceived at a meeting of the Federation of Kosher Butchers of New York, Inc., primarily to make it possible for retailers who became stockholders to obtain a supply of meat for sale in their establishments which because of wartime conditions they would otherwise have been unable to get. One hundred and four retail meat dealers in Brooklyn each bought and paid cash for four shares of stock in the corporation at $500 per share. The corporation leased a slaughter house in Brooklyn, secured a license from the War Food Administration, complied with the requirements of what was known as the Vinson Directive, arranged for a constant supply of cattle to be butchered and began doing business on January 2, 1945. At first only the beef reserved for civilian use was sold, always billed at ceiling prices, only to stockholders. But soon eighteen retailer dealers who were not stockholders were also sold beef at ceiling prices. The appellee contends, though the appellants do not admit it, that the sales to non-stockholders were made of non-kosher beef required for the army under the Vinson Directive and rejected because not up to specifications. After these proceedings were commenced sales of meat were made to sixty-eight non-stockholder retailers.

It became apparent on or before January 16, 1945, that the corporation needed more capital and on that date each stockholder was assessed $60 per share and required to buy another share of stock at $500. On January 31, 1945 each of twenty-one other retailers became equal stockholders in the corporation at $500 a share but even after that its capital requirements and its losses in operation were so great that the corporation needed more money and on February 16, 1945, each of its one hundred and twenty-five stockholders was assessed and paid $340 a share. Meanwhile meat was

sold by the corporation to its stockholders in quantities as ordered regardless of the amount of stock owned by such purchasers and was sold to the eighteen non-stockholders, all at ceiling prices which did not enable the corporation to avoid continuing losses. During the months of January and February an accountant for the Price Administrator, with the consent and cooperation of the defendants, examined the books of the corporation. After the situation was reported to the Office of Price Administration this suit was, on February 23, 1945, brought against the corporation and the individual defendants who are its officers or directors to enforce compliance with the above mentioned statute, as amended, and the regulations promulgated thereunder and to recover triple damages. The complaint charged the violation of § 4(a) of the Act, as amended, 56 Stat. 23, 765, 57 Stat. 566, 50 U.S.C.A.Appendix, §§ 901 et seq., 904(a); Executive Order No. 9250, 50 U.S.C.A.Appendix, § 901 note, 7 Fed. Reg. 7871; Executive Order No. 9328, 8 Fed.Reg. 4681, in that the defendants had failed to comply with the provisions of Maximum Price Regulation No. 169, 7 Fed.Reg. 10381. The violations alleged in count I were that from the time the corporation began doing business to the date of the suit the defendants (1) evaded the provisions of Regulation No. 169 "by offering, selling, or delivering beef on condition that their purchasers be required to purchase some other commodity—i. e. stock in defendant corporation and on the further condition that the purchasers be required to pay certain alleged assessments to the defendant corporation; and (2) that "the defendants sold, delivered, and offered to sell and deliver beef at prices in excess of the maximum prices established therefor by the regulation." There was a second count dealing with the claim for treble damages which need not now be noticed further. The injunction granted restrained the alleged violations of the regulation and any other violation of it pendente lite.

Sec. 4(a) of the Act provides that:

"(a) It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing."

Provision for the issuance of a permanent or temporary injunction upon the application of the Price Administrator is found in § 205(a). The pertinent part of Regulation No. 169, § 1364.406(a) provides that:

"The price limitations set forth in this Revised Regulation shall not be evaded, either by direct or indirect methods, in connection with an offer, solicitation, agreement, sale, delivery, purchase or receipt of, or relating to beef, veal, or processed products separately or in conjunction with any other commodity or services, or by way of any commission, service, transportation, wrapping, packaging or other charge, or discount premium or other privilege, or by tying agreement or other trade understanding * * *;

"(b) Specifically, but not exclusively, the following practices are prohibited:

"(5) Offering, selling, or delivering beef, veal, or any processed product on condition that the purchaser is required to purchase some other commodity.

\*    \*    \*    \*    \*    \*

"(c) Any transaction, device, or arrangement whereby a person who sells, transfers or delivers beef or veal to a retail establishment not wholly owned and operated by such person, receives for the beef or veal a greater realization than he would be entitled to receive under this regulation for the sale of such beef or veal to a retailer is a violation of this regulation and is prohibited."

The trial judge found, inter alia, that the purchases of stock and the assessments made upon the stockholders were required under the plan or organization of meat

retailers who desired to purchase meat from the defendant corporation; that the assessments were made necessary by the fact that meat was invoiced to stockholder purchasers at ceiling prices, but its cost to the corporation was so high that a loss was sustained by sales to stockholder retailers at ceiling prices; and that the plan of reorganization was adopted in order to circumvent Revised Maximum Price Regulation No. 169, § 1364.406(a).

Upon the showing made it cannot be held that these findings were clearly erroneous. Whether or not the formation of the corporation and its activities was an effort to circumvent the regulation depends of course upon whether those thus engaged were merely making an effort to obtain a supply of meat at no more than ceiling prices, or whether they were endeavoring to get the meat at whatever cost, indirectly above ceiling prices, which might be the result of the method they chose to get it. If they were actually trying to do the former they would indeed be, as they claim to be, within the principle on which Walling v. Plymouth Mfg. Corporation, D.C. N.D.Ind., 46 F.Supp. 433, affirmed, 7 Cir., 139 F.2d 178, certiorari denied, 322 U.S. 741, 64 S.Ct. 1144, 88 L.Ed. 1574, was decided. See also, Fleming v. Palmer, 1 Cir., 123 F.2d 749, certiorari denied, 316 U.S. 662, 62 S.Ct. 942, 86 L.Ed. 1739. There might have been an honest, though unsuccessful, attempt to make the corporation pay its way when selling its product at ceiling prices and the losses may have been due to the initial cost of the operations which would when continued result in profits sufficient to absorb the losses sustained and at least avoid others, but the findings preclude that.

■ Before a violation can be found, what was done must fall within the language of the regulation sufficiently to give those subject to it notice that their acts are illegal. M. Kraus & Bros., Inc. v. United States, 326 U.S. ——, 66 S.Ct. 705. If the corporation is treated as an entity separate from its stockholders who purchased beef from it and were required to buy additional stock and pay assessments as a condition upon the right to purchase, there can be no doubt that the corporate seller received for the beef a greater realization than it would be entitled to receive under Reg. 169, and that would be a violation of § 1364:406(c) of the regulation. It realized not only the ceiling prices but contributions in addition toward the cost of the beef it sold. And if the corporate entity is disregarded and the arrangement treated as a joint venture of the stockholders, the end result is the same. Then each while contributing his proportionate share of the expenses could and did buy what beef he needed for his retail business though that was more or less than others in the common venture bought. Until a "purchaser" received more than that part of the beef owned in common which was his aliquot share he would buy nothing from the others but when he received more than that he would buy from them and they would receive by means of the "assessments" paid into the common fund a greater realization than they would be entitled to receive under the regulation. So in either aspect the arrangement under which the meat was sold violated the terms of the regulation because the seller or sellers' realized more than merely the ceiling prices at which the meat was ostensibly sold. As some of the sales were clearly unlawful for this reason the injunction was not an abuse of discretion and we need not decide whether some sales were lawful or whether others were unlawful for other reasons.

Affirmed.