**WALLING, Adm'r, Wage and Hour Div., U. S. Dept. of Labor, v. WESTERN WEIGHING & INSPECTION BUREAU.**

**No. 9008.**

Circuit Court of Appeals, Seventh Circuit.

Nov. 6, 1946.

William S. Tyson, Sol., Morton Liftin and Bessie Margolin, Assts., and Eugene Green, Atty., Dept. of Labor, all of Washington, D. C., and Kenneth P. Montgomery, Regional Atty., Dept. of Labor, of Chicago, Ill., for appellant.

Amos M. Mathews, of Chicago, Ill., (B. E. Dwinell and D. P. Loomis, both of Chicago, Ill., and Joseph A. McClain, Jr., and Robert W. McElhinney, both of St. Louis, Mo., and Wm. J. Milroy and Nelson Trottman, both of Chicago, Ill., of counsel), for appellee.

---

Before SPARKS and MAJOR, Circuit Judges, and HOLLY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order, entered September 19, 1945, dismissing an action instituted by plaintiff as Administrator of the Wage and Hour Division, United States Department of Labor, under Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. By the complaint it was sought to restrain violations of the overtime and record keeping provisions of the Act. The defendant, Western Weighing and Inspection Bureau, is an unincorporated association organized by Class I railroads to perform weighing and inspection services for railroads operating in a certain district as defined by the Interstate Commerce Commission.

The court found the facts as stipulated by the parties and concluded as a matter of law that defendant was not subject to the provisions of the Act. In so doing, the court stated: "I conclude that the employees, the subject of the complaint filed herein, are not employees of the defendant, but are joint employees of the various railroads comprising the defendant and as such are the employees of an employer subject to the provisions of Part I of the Interstate Commerce Act [49 U.S.C.A. § 1 et seq.], and, therefore, exempt from the provisions of the Act sued upon herein." 70 F.Supp. 150. In addition to this conclusion of law, the court in a memorandum opinion stated: "The Western Weighing and Inspection Bureau has no legal existence of its own, but is a joint department of the member railroads which set it up. Its employees are under the direct supervision of the member railroads exercised through the board appointed by the member railroads which in turn selects the manager to supervise their duties," and further "that the employees here involved are employees of the railroads and as such are the employees of an employer subject to the provisions of Part I of the Interstate Commerce Act." 70 F.Supp. 150.

While the contested issues are stated by the respective parties in numerous and divers ways, we are of the view that the primary and controlling issue is whether the employees involved are those of the defendant or of the various railroads for whom defendant's services were performed. Obviously, if they were the employees of the railroads and not those of the defendant the cause of action could not be maintained against the latter and the complaint was properly dismissed.

Plaintiff devotes much of his argument to the point that the defendant as an association is a legal entity and therefore subject to the provisions of the Act. This argument is perhaps made by reason of the view expressed by the court in its memorandum opinion that the defendant "has no legal existence of its own." In support of this argument plaintiff calls our attention to Section 11(a) of the Act, which authorizes the Administrator to bring an action to restrain "any person" from the commission of certain prohibited acts, and to Section 3, which defines a "person" to mean "an individual, partnership, association, * * * or any organized group of persons." Numerous court decisions are cited, including those of the Supreme Court holding that an association is amenable to suit under other statutory provisions, notably the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. We are of the view that this argument is beside the point. Assuming that an association may be a "person" subject to the Act, it does not follow, as plaintiff contends, that the instant association is such a "person." In other words, whether an association is subject to the Act must be determined from the facts of the case and not because the Act defines it as a "person." This would be true of any and all entities defined as a "person." The court's conclusion of law presents the issue, and it must be decided upon the facts of the instant and not those of some other case.

Thus, a statement of some of the more important facts as stipulated must be noted. Defendant was formed and operates under agreements with certain railroads. It is under the general direction of a managing committee of nine officers of member railroads, each of whom has the rank of vice president or the equivalent on his own railroad. The managing committee appoints

defendant's manager, who acts under the general direction of the managing committee. Such manager appoints subordinate officials, and the manager and such subordinate officials hire and discharge the employees.

The salaries and wages of the employees and all other expenses of defendant are paid by the railroads in mathematical proportion to the services received from the employees. Each railroad pays monthly assessments on the basis of services received, and the total of these assessments for each month equals exactly the total of salaries, wages and other expenses. Each year the total assessments equal exactly the total expenses. Current monthly expenses, including salaries and wages, are paid from a working fund supplied by the member railroads, and the monthly assessments replace the monthly expenditures. The duties of the employees, and the manner of performance of such duties are specified in detail by tariffs filed by the member railroads with the Interstate Commerce Commission, and substantially all of the work performed by such employees is in accordance with the rules and schedules in such tariffs. These are tariffs of the individual member railroads and not tariffs of defendant.

It should also be noted that the defendant owns certain property with which the business is conducted, including motor trucks, passenger automobiles, tool sheds, shanties, tools and office equipment. All of such property, however, has been paid for by the railroads. Defendant also has contracted in its own name with the unions that have represented the involved employees. Official accounts carried and maintained by government agencies in connection with the administration of the Railroad Retirement Act, 48 Stat. 1283, the Railroad Unemployment Insurance Act and the Carriers Taxing Act of 1937, 45 U.S. C.A. § 261 et seq., are in the name of the defendant as the employer. The railroads, however, pay all taxes imposed under these statutes.

The defendant performs services not only for member railroads of the association but also for any other railroad operating in defendant's territory desiring to use its facilities. The services thus performed include supervision of the operation of railroad track scales, auditing and checking of transit bills to insure compliance with railroad tariffs, inspection of inbound and out-bound freight, inspection of perishable commodities, enforcement of demurrage and storage rules in railroad tariffs, installation of grain doors on freight cars and the salvaging and repairing of used grain doors to make them suitable for future use. Prior to the time when defendant undertook this last mentioned service the work was performed by independent contractors in various cities under contracts with the railroads. In the performance of these duties defendant obtains no revenue from shippers or the public and does not hold itself out to perform services for shippers or the public. Defendant makes no profit and all expenditures by it, including the wages of the employees in question, are paid to and held by the auditor of the railway executives, who disburses funds on authorization of the defendant's manager. The wages of such employees are comparable in amount to wages paid to individual employees of railroads and general wage increases granted to railroad employees have been granted to the employees here involved. Their work is of the same character as that frequently performed by employees or subordinate officials of individual railroads when such railroads do not avail themselves of the services of defendant or similar bureaus.

The employees have for many years been granted the use of free transportation by the railroads, in accordance with Section 1(7) of the Interstate Commerce Act, 49 U.S.C.A. § 1(7), with the knowledge and consent of the Interstate Commerce Commission. We quote the following significant provision from the stipulation of facts: "If for any reason it should become necessary to pay employees of the defendant any increases or additions to their compensation, by way of overtime payments or otherwise, such increases, in their precise aggregate amount, would be paid by the aforesaid railroads according

to the apportionment and assessment bases described herein."

Notwithstanding such stipulated facts, plaintiff contends that the involved employees are those of the defendant and not those of the member railroads. With this contention we do not agree. In our judgment, defendant is nothing more than an instrumentality of the railroads or, as the lower court said, "a joint department of the member railroads which set it up." Every function which it performs is directly on behalf of the railroads and it has no authority or power except that which they expressly delegate to it. It has neither profit nor profit motive and handles no money of its own. Every phase of its activities is directed, controlled and managed by agents and officers appointed and paid by the railroads.

Plaintiff's reasoning is predicated upon a highly technical and superficial view and ignores the realities of the situation. No good purpose could be served in an attempt to follow plaintiff's argument in detail concerning the numerous matters which it attributes to the defendant in an effort to show the employer-employee relationship. Typical and illustrative is plaintiff's statement that "the defendant hires, pays, and supervises the employees engaged to carry on its operations." This statement only represents half the truth and is at variance with the conceded facts. In reality it hires as an agent or department of the railroads, it pays with money furnished by the railroads and supervises only in accordance with and to the extent authorized by the railroads.

Briefly repeating the conceded facts as they bear upon this typical assertion, they show that the defendant is under the general direction of a managing committee which consists of nine members, each member being also an officer of a different member road. The managing committee of the defendant appoints the manager of the defendant who manages the defendant. The manager hires personnel to carry on the functions of the defendant hereinafter described. The manager of defendant is paid an annual salary which is fixed as to the amount by the managing committee. The managing committee exercises general supervision over the defendant. All the employees of the defendant are employed or discharged by the manager or by subordinate officials of the defendant who are under the manager's supervision. All of defendant's expenses, including the salaries of officers and wages of employees, are paid by the railroads in proportion to the amount of services rendered by the defendant to each of the railroads respectively. More than that, if plaintiff should prevail in this suit and the employees were awarded additional compensation by way of overtime payments or otherwise, such award would be paid by the railroads and not by the defendant. Thus there is not the slightest basis for the contention that the defendant "hires, pays, and supervises the employees."

True, the involved employees are in numerous instances referred to and designated as those of the defendant; in fact, they are so designated on books and records kept by the defendant. But because they are referred to as such does not alter the basic fact that they are employees of the railroads. We apprehend it is not an uncommon thing for employees of a large industrial or mercantile business to be referred to as those of some department or subdivision thereof and to be carried on the books as such. There at once comes to mind the situation in our own court. The personnel of the court and of the individual Judges are commonly referred to as employees of the court or of the Judge. In the clerk's office the employees are referred to as those of the clerk and carried on the records in that office as such. This situation, however, would constitute no proof that they are not employees of the United States Government.

That the involved employees were those of the railroads and not of the defendant finds support in a decision rendered by the Interstate Commerce Commission in 1928, wherein it was held that employees occupying the precise status of those in the instant case were "joint employees" of the railroads. "Employee" Under the Railway Labor Act—Trunk Line Association, 1928,

136 I.C.C. 321. The facts in that case are so similar and the reasoning so pertinent that we quote (page 322):

"The Trunk Line Association is a voluntary unincorporated association created and supported by certain railroad companies in eastern trunk-line territory as follows (naming railroads):

"The Trunk Line Association is under the direction of an executive committee which is composed of the chief traffic officers of the member lines. The association has no income from any source except from the member lines, all of its expenses, including salaries of the personnel, being paid by the member carriers. The work of the association includes the selling of tickets, consideration of rate matters, preparation of data to be used by the carriers in cases relating thereto, the issuance of tariffs, supervision of stoppage of freight in transit, supervision of weighing and inspection of shipments, collection of moneys due carriers, and issuance of passes to certain classes of persons. All of this work is performed for the member carriers by joint employees as distinguished from individual employees performing the same class and character of work for individual carriers not members of the Trunk Line Association."

Furthermore, the Commission has recognized that employees of Weighing and Inspection Bureaus such as those of the instant case are entitled to the issuance of free transportation under Section 1(7) of Part I of the Interstate Commerce Act, 49 U.S.C.A. § 1(7), as joint employees of the railroads. Obviously, if they were not such employees they could not qualify and would not be entitled to such transportation.

In a similar situation, the Bureau of Motor Carriers of the Interstate Commerce Commission in Administrative Ruling No. 60, issued on July 17, 1937, held that certain employees were employees not of the Carriers Association but of its members. The ruling states: "A motor carrier association, which is not organized for profit but is maintained principally from the contributions of its members and exists solely for the purpose of attending to matters relating to the motor transportation activities of its members and whose policies are under the direction of officers selected from its members, is an association performing functions which otherwise would be performed by the member carriers individually. Therefore, its officers and employees are in effect joint employees of the member carriers and as such may be included within the term 'employees' as used in paragraph 7 of Section 1 of the Interstate Commerce Act."

Plaintiff stresses the fact that the defendant, in a proceeding before the Railway Labor Board under the Transportation Act of 1920, 49 U.S.C.A. § 71 et seq., took the position that it was the employer rather than the railroads and that the Railway Labor Board had no jurisdiction over a labor controversy with such employees. Defendant's contention at that time was upheld by the Board. 4 U.S.R.L.B. 167. It is pertinent to note that prior to 1926 jurisdiction was vested in the Railway Labor Board to determine who was an employee under the statute then providing for adjustment of disputes between railroads and their employees. Title III of the Transportation Act of 1920, 41 Stat. 469. This provision, however, was repealed by the Railway Labor Act of 1926, 44 Stat. 577, 45 U.S.C.A. Chap. 8, § 151, by which the Interstate Commerce Commission was for the first time given jurisdiction to determine who is an "employee" of a railroad. And as already shown, the Commission has determined that employees in all respects similar to those of the instant case are "joint employees" of the member railroads.

■ Thus, in view of what has subsequently occurred, it would seem that little if any weight should be attached to the decision of the Railway Labor Board under the Transportation Act of 1920. We agree that the decision of the Interstate Commerce Commission and the recognition by it that the involved employees are those of the railroads is not decisive. We think, however, its reasoning is persuasive. Furthermore, without the aid of any ad-

ministrative interpretation, it is our view that the conclusion of law pronounced by the lower court is correct.

Holding as we do that the employees involved are those of the railroads and not of the defendant, it follows that the Act upon which the complaint is predicated is without application. We therefore find it unnecessary to discuss or decide any of the other questions presented on this appeal.

The judgment of the District Court is Affirmed.