## McCOMB v. ROBERT W. HUNT CO.
### No. 9456.

United States Court of Appeals
Seventh Circuit.

Feb. 28, 1949.

752

Lewis F. Jacobson, Sidney C. Nierman and David Silbert, all of Chicago, Ill. (Arthur Altschul and I. Earl Arkiss, both of Chicago, Ill., of counsel), for appellant.

William S. Tyson, Solicitor and William A. Lowe, Atty., U. S. Department of Labor, both of Washington, D. C., Herman Grant, Department of Labor, Merchandise Mart, of Chicago, Ill., Bessie Margolin, Asst. Solicitor, and Joseph D. Mladinov, Attorneys, United States Department of Labor, all of Washington, D. C., for appellee.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

MINTON, Circuit Judge.

This is an appeal from a decree enjoining the defendant-appellant from violating the Fair Labor Standards Act [1] by failure to pay certain employees, known as senior inspectors, for overtime in excess of forty hours per week at a rate not less than one and one-half times the regular rate. The defendant claims first, that the employees concerned are not engaged in the production of goods for commerce; secondly, that in any event, the employees are exempt as administrative employees under Section 13 (a) (1) [2] of the Act; and third, that the District Court erred in excluding evidence that in not paying overtime, the defendant acted in good faith in reliance upon orders of the Bureau of Internal Revenue under the Stabilization Act of 1942 [3] prohibiting such payments, and that such evidence constitutes a defense under 29 U.S.C.A. § 258, known as Section 9 of the Portal-to-Portal Act of 1947. The District Court made findings of fact and stated its conclusions of law thereon. From these findings these undisputed facts appear.

The defendant's employees here involved, senior inspectors, receive over $200 per month salary, together with traveling expenses, meals, and lodging. They are sent all over the United States. They are specialists whose qualifications are those of technicians who have a specialist's training, although the educational standards vary all the way from the eighth grade to graduates of engineering schools. The inspectors are not supervised in their work and come and go as their duties require. These inspectors render "an engineering inspection and testing service of structural steel, cement and concrete, rail and fastenings and track materials, and general engineering materials and equipment, including bridges, railroad cars, other vehicles, engines, boilers, machines, etc."

The services of these inspectors, who are employed and paid only by the defendant, are furnished for a fee exclusively to purchasers of materials and equipment. After inspection is made, the inspector writes and sends his report to one of the offices of the defendant where it is typed and edited but never revised. The reports are always accepted by the defendant as made by the inspector. The report is then sent to the client or customer who may or may not accept and act upon this report and purchase the goods concerned. The defendant's clients are chiefly utilities, large building projects, municipalities, states, the federal government, and foreign countries. The defendant also maintains and operates laboratories as a part of its testing services.

When the defendant receives an order, it selects an inspector and assigns him to the job. The inspector, with his credentials, instructions, and applicable specifications and blueprints, reports to the manufacturer's plant. Although the manufacturer may have made his own tests and inspection, the defendant's inspector makes his tests and inspection in his own way but in accordance with the data furnished him, which may be incorporated in the instructions and specifications. The specifications are sometimes taken from the contract between the manufacturer and the prospective purchaser or from standard specifications printed in some technical reference work. When there are no written specifica-

---

[1] 29 U.S.C.A. § 201 et seq.
[2] 29 U.S.C.A. § 213(a) (1).
[3] 50 U.S.C.A. Appendix, § 965.

tions, the inspector is furnished with a copy of the purchase order describing the articles to be inspected. These are sometimes brief, sometimes extensive. The specifications state precisely some of the requirements and also generally contain broad language, involving unexpressed details, such as the materials or equipment shall be suitable for the specified purpose, free from injurious defects, of best quality, of good workmanship, according to best standards, capable of certain degrees of operating efficiency, possessed of certain characteristics, and the like. The specifications generally require that as to certain other factors, the inspector's approval is a prerequisite to the purchaser's obligation to accept the goods. In many cases, the specifications give only approximate dimensions.

The court specifically found:

"A substantial amount of goods inspected by the inspectors is used as instrumentalities of commerce by the defendant's customers or clients. After inspection, a substantial portion of the goods so inspected is shipped by the sellers thereof in interstate commerce and a substantial amount is used by defendant's customers or clients in the production of other goods for interstate commerce."

This part of the court's finding is not challenged by the defendant. The court then found:

"The inspectors are engaged in processes and occupations necessary to the production of goods for interstate commerce."

This last finding the defendant claims is unwarranted. It is, however, the ultimate finding of fact upon which the conclusion of law is based that the defendant's inspectors were engaged in the production of goods for commerce. We think the other subsidiary findings, which are unchallenged, abundantly support the ultimate finding that the "inspectors are engaged in processes and occupations necessary to the production of goods for interstate commerce."

The finding first set out above recites that a substantial part of the goods and materials inspected is used as instrumentalities of commerce by the defendant's clients, and a substantial portion after inspection is shipped in interstate commerce to the defendant's clients and by them used in the production of goods for commerce. This finding alone is sufficient to support the court's conclusion. The inspection is the first step in the process. Commerce begins with the inspection or selection. This alone is sufficient to sustain the court's conclusion of law that the defendant's inspectors were engaged in the production of goods for commerce. Roland Electric Co. v. Walling, 326 U.S. 657, 664, 66 S.Ct. 413, 90 L.Ed. 383; McComb v. Farmers Reservoir & Irrigation Co., 10 Cir., 167 F. 2d 911; McComb v. Super-A Fertilizer Works, 1 Cir., 165 F.2d 824; Lewis v. Florida Power & Light Co., 5 Cir., 154 F.2d 751; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582; Walling v. Amidon, 10 Cir., 153 F.2d 159.

The second contention of the defendant is that the inspectors are exempt under Section 13(a) (1) of the Fair Labor Standards Act. This section excepts from the Act "any employee employed in a bona fide * * * administrative * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator) * * *." Pursuant to this authority, the administrator promulgated a regulation delimiting and defining an administrative employee as one:

"(a) Who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

"(b) (1) Who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) Who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment * * *." 29 Code Fed.Regs. Sec. 541.2 (Cum.Supp.1943).

The District Court found as to this aspect of the inspectors' work:

"The inspectors have no authority to determine questions involving * * * the type of contracts to be made, or any other matters related directly to recognized fields of management. The inspectors do not make or directly influence management policy. The inspectors perform only the inspection services sold by defendant and are not engaged in any managerial capacity or function. Their activities relate only to specific inspections furnished by the defendant and not to its general business operation. Their work is not directly related to management policies or general business operations.

"The services of 'senior' and 'chief' inspectors do not constitute assistance to an employee employed in a bona fide executive or administrative capacity.

"The inspectors' work is so prescribed and so laid out that while they must exercise a high degree of skill in making certain determinations, they are not required, in fact, not permitted to exercise discretion and independent judgment in the normal performance of their duties."

■ The defendant says these findings are not warranted. The findings will not be disturbed by us if they may be sustained upon any rational view of the evidence, including all reasonable inferences that may be drawn from the evidence. Shapiro v. Rubens, 7 Cir., 166 F.2d 659, 666.

In our opinion, these inspectors had nothing to do with management policies or general business operations. They were mere "tools" used by management to carry out its policies. The inspectors did not exercise the independent judgment and discretion intended by the regulations. They went out on the job armed with their credentials and other instructions and data to guide them. The latter was their yardstick. They had nothing to do with the making of the yardstick. They only applied it. In the application, they used only such judgment as any skilled employee or technician might use in the performance of his task in a factory.

■■ The findings are not clearly erroneous and are amply sustained by the evidence. The inspectors are not exempt as administrative employees within the meaning of the Act and the regulations.

■ The defendant next contends that the District Court erred in excluding evidence that the defendant acted in good faith upon a determination of the Bureau of Internal Revenue that these inspectors were administrative employees under the Stabilization Act of 1942 and were paid in accordance therewith, and that payment in accordance with the Fair Labor Standards Act would have been unlawful. The short answer to this contention is that this is not an action to recover overtime pay. We decide nothing as to whether these inspectors could or could not recover overtime pay. The instant case involves only the future conduct of the defendant, which is enjoined by the judgment appealed from. The Stabilization Act has no application now, and a failure to comply with the Fair Labor Standards Act can no longer be excused. The defendant claims the right to deny these inspectors overtime pay *now and in the future*. This is what is enjoined. What the defendant may have been justified in doing during the war emergency pursuant to wartime controls is not evidence now as to its present conduct, no longer protected by the wartime controls. It is this latter conduct that we find, as did the District Court, to be in violation of the Fair Labor Standards Act.

■ For the same reason, Section 9 of the Portal-to-Portal Act has no application. It is future conduct that is enjoined and not past liability or punishment that is enforced by the present judgment. Only the latter may come within Section 9 of the Portal-to-Portal Act. There was no error in excluding evidence of justification for past conduct in a suit enjoining future conduct.

We find no error in the record, and the judgment is affirmed.