McCOMB v. HOMEWORKERS' HANDI-
CRAFT COOPERATIVE et al.

No. 5888.

United States Court of Appeals
Fourth Circuit.

Argued June 29, 1949.

Decided Aug. 22, 1949.

Bessie Margolin, Asst. Solicitor, U. S. Department of Labor, Washington, D. C. (William S. Tyson, Solicitor, William A. Lowe and Helen Grundstein, all of Washington, D. C., Attorneys, and Beverley R. Worrell, Regional Attorney, U. S. Department of Labor, Birmingham, Ala., on the brief), for appellant.

Thornton H. Brooks, of Greensboro, N. Car., Robert G. Cabell, of Richmond, Va., and Morris E. Lasker, New York City (Brooks, McLendon, Brim & Holderness, of Greensboro, N. Car., and Battle, Fowler, Neaman, Stokes & Kheel, New York City, on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER, and DOBIE, Circuit Judges.

PARKER, Chief Judge:

This is an appeal by the Administrator of the Wage and Hour Division from adverse decrees in a suit instituted against the Millhiser Bag Company, the Chase Bag Company and the Homeworkers Handicraft Cooperative, to restrain violations of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. The complaint alleged that Millhiser and Chase were bag manufacturers who employed homeworkers on a piece work basis to insert draw strings in bags of their manufacture at a wage rate below that allowed by the statute, and that these homeworkers were members of the cooperative, which was not a true cooperative but a mere agency for dealings between Millhiser and Chase and these homeworking employees. The District Judge denied relief and dismissed the complaint as

against Millhiser and the cooperative on the ground that the homeworkers were not employees of the bag companies but independent contractors functioning through the cooperative. Additional grounds given for the dismissal were that the defendants had acted in good faith, relying upon rulings of the Bureau of Internal Revenue, and that the administrator had been guilty of laches and delay in instituting the proceedings. As to Chase, the suit was dismissed on the ground that that company had ceased using homeworkers in the stringing of bags several months before the hearing and had no intention of using them in the future.

The facts are that the insertion of draw strings is an essential step in the manufacture of tobacco bags and other bags of the sort manufactured by Millhiser and Chase. The insertion of the strings is a simple operation requiring little or no skill and no supervision. After the bags are finished except for the insertion of draw strings, these are inserted by a handworker with a needle. The bags are taken to the homes of the workers for this to be done and they are paid for the labor on a piece work basis of so much per thousand bags. The evidence shows that the workers realize between 5 and 13 cents per hour at the rate allowed them. Between 1800 and 2000 women are engaged in the work, which they perform at their homes in Virginia and Western North Carolina.

Prior to the passage of the Fair Labor Standards Act in 1938, there was little complication in the dealings of the bag companies with these women workers. The relationship was a simple one of homework done for the companies and compensated on a piece work basis without any attempt to camouflage its true nature. Agents of the company distributed the unfinished bags to the women workers and collected them after they had been strung, paying to the workers the piece rate compensation allowed. Shortly after the passage of the act, in an effort to avoid its application, a corporation was organized to deal with these workers. They were paid for stringing the bags as formerly; but payment was made by the corporation, which was allowed by the companies 15c per thousand bags above the amount paid to the workers. The corporation merely did what the bag companies had formerly done through their agents, who were employed by it after its organization; and, so far as the workers were concerned, the business went forward in the same way as before.

In 1941, the attorney who had organized the corporation for the handling of the bags, becoming fearful that it might be held subject to the provisions of the act, proceeded to dissolve it and to organize the cooperative, composed of the homeworkers, to take over its functions. The cooperative is now doing what the agents of the bag companies did in distributing and collecting bags and paying the workers prior to the organization of the corporation and what the corporation did thereafter. It receives the bags from the companies, distributes them to and collects them from the workers and ships them out as the companies direct. It contracts with the companies for the stringing of the bags at a rate in excess of what it pays the workers; but any excess over the cost of its operations is distributed among the workers, not per capita, but in accordance with the amounts which have been paid them for work done. There is evidence to the effect that the cooperative is controlled, not by its members, but by certain salaried employees who were formerly connected with the bag companies; that the salaries of these employees have been raised while the compensation paid the workers was allowed to remain at the same rate until after this suit was instituted, notwithstanding the rise in the cost of living and of wages in all other lines of industry; and that the cooperative functions as a mere instrumentality of the bag companies. It is not necessary to go into this, however, as we are satisfied that the homeworkers are employees of the bag companies within the meaning of the Fair Labor Standards Act and that their status as employees has not been affected by the organization of the cooperative, whatever view be taken as to who exercises the real control over it.

Four questions are presented for our consideration: (1) whether the homeworkers are employees of Millhiser and Chase within the meaning of the Fair Labor Standards Act; (2) whether their status as employees has been affected by the organization of the cooperative; (3) whether relief should be denied because of a ruling of the Bureau of Internal Revenue under the Social Security Act, 42 U.S.C.A. § 301 et seq., or on the ground of laches or estoppel; and (4) whether the suit was properly dismissed as to Chase.

As to the status of the homeworkers, we think it perfectly clear that, under common law concepts, they are employees and not independent contractors. They are not engaged in an independent calling but are performing unskilled manual labor, which constitutes a single step in the manufacturing process in which the bag companies are engaged. The bags on which the labor is performed never become their property in any sense, but remain the property of the companies by whom they are sold when the stringing operation is completed. It is true that there is no supervision of their work; but it is so simple that it requires no supervision. They are manifestly mere laborers compensated on a piece work basis and are not converted into independent contractors because they are allowed to do the work in their own homes and away from the premises of those who employ them. As we said in United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, 611, the law of independent contractors has an important place in the law, but surely it was never intended to apply to humble employees of this sort.

Whether or not the homeworkers are employees within the meaning of the Fair Labor Standards Act, however, is to be determined, not by common law concepts, but by a consideration of the purpose which Congress had in mind in the passage of the act, which defines "employ" as including "to suffer or permit to work". 52 Stat. 1060, 29 U.S.C.A. § 201, sec. 3. This definition of employment has been called by Senator, now Mr. Justice, Black the "broadest definition that has ever been included in any one act". 81 Cong.Rec. 7659; United States v. Rosenwasser, 323 U.S. 360, 362, 65 S.Ct. 295, 89 L.Ed. 301. "The motive and purpose" of the legislation, as said by the Supreme Court in United States v. Darby, 312 U.S. 100, 115, 61 S.Ct. 451, 457, 85 L.Ed. 609, 132 A.L.R. 1430, are "plainly to make effective the Congressional conception of public policy that interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions * * *". As pointed out in a later case, "The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided." Brooklyn Savings Bank v. O'Neill, 324 U.S. 697, 706-707, 65 S.Ct. 895, 902, 89 L.Ed. 1296. Such being the purpose of the statute, common law rules as to distinctions between servants and independent contractors throw but little light on who are to be deemed employees within its meaning. This was clearly stated by the Supreme Court in National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 855, 88 L.Ed. 1170, brought under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., a companion piece of legislation, where the court said:

"The principal question is whether the newsboys are 'employees.' Because Congress did not explicitly define the term, respondents say its meaning must be determined by reference to common-law standards. In their view 'common-law standards' are those the courts have applied in distinguishing between 'employees' and 'independent contractors' when working out various problems unrelated to the Wagner Act's purposes and provisions.

"The argument assumes that there is some simple uniform and easily applicable test which the courts have used, in dealing with such problems, to determe whether persons doing work for others fall in one class or the other. Unfortunately this is not true. Only by a long and tortuous history was the simple formulation worked out which has been stated most frequently as 'the test' for deciding whether one who hires another is responsible in tort for his wrongdoing. But this formula has been by no means exclusively controlling in the solution of other problems. And its simplicity has been illusory because it is more largely simplicity of formulation than of application few problems in the law have given greater variety of application and conflict in results than the cases arising in the borderland between what is clearly an employer-employee relationship and what is clearly one of independent entrepreneurial dealing. This is true within the limited field of determining vicarious liability in tort. It becomes more so when the field is expanded to include all of the possible applications of the distinction.

\* \* \* \* \* \*

"It will not do, for deciding this question as one of uniform national application, to import wholesale the traditional common-law conceptions or some distilled essence of their local variations as exclusively controlling limitations upon the scope of the statute's (broad terms and purposes).

\* \* \* \* \* \*

" 'Technical concepts pertinent to an employer's legal responsibility to third persons for the acts of his servants' have been rejected in various applications of this Act both here \* \* \* and in other federal courts \* \* \*. There is no good reason for invoking them to restrict the scope of the term 'employee' sought to be done in this case. That term, like other provisions, must be understood with reference to the purpose of the Act and the facts involved in the economic relationship. 'Where all the conditions of the relation require protection, protection ought to be given.' "

■ ■ When the rule thus stated is applied, there can be little question that the homeworkers here involved require the protection of the act and that the protection should be given them. They are unskilled and unorganized manual laborers performing a necessary service in the manufacture of bags, and they are paid at a rate which brings them the ridiculously low wage of from 5 to 13 cents per hour for their labor. It is well settled that the fact that they are paid on a piece work basis does not take them from under the act. United States v. Rosenwasser, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301; United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757; Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772. We think it equally clear that they are not taken from under it by reason of the fact that the work is done in their own homes without the supervision and direction of the bag companies. Cases directly in point in support of this proposition are Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921; Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60; Walling v. Twyeffort, Inc., 2 Cir., 158 F.2d 944; Fleming v. Palmer, 1 Cir., 123 F.2d 749; and Walling v. Wolff, D.C., 63 F.Supp. 605; Fleming v. Demeritt Co., D.C., 56 F.Supp. 376. The American Needlecrafts and the Twyeffort cases were cited with approval by the Supreme Court in Rutherford Food Corp. v. McComb, supra, 331 U.S. 722, 729, 67 S. Ct. 1473, 91 L.Ed. 1772.

A case on "all fours" with the case here, except as to the effect of the intervention of the cooperative, is the carefully considered decision of Walling v. American Needlecrafts, supra [139 F.2d 64], where the Court of Appeals of the Sixth Circuit, in an opinion by Judge Simons, went carefully into the matter of homework such as is here involved. In the course of his opinion, Judge Simons clearly demonstrated the intent of Congress that homeworkers should be covered by the legislation, saying as to the legislative history of the act: "Section 6(a) [29 U.S.C.A. § 206(a)] provides as follows: 'Every employer

shall pay to each of his employees * * wages at the following rates * * *(5) If such employee is a homeworker in Puerto Rico or the Virgin Islands, not less than the minimum piece rate prescribed by regulation or order. * * *' So it is persuasively reasoned that the permissible relaxation by the Administrator of statutory standards in the case of homeworkers in Puerto Rico and the Virgin Islands, carries with it an inescapable implication that homeworkers generally are included in the statutory definition of 'employee.' The inference is strengthened by the fact that when the Black-Connery Bill was first considered it contained a provision in § 6(a) giving the Board power to define, by regulation or order, the determination of the number of employees employed by any employer through the use of agents, independent contractors, subsidiary or controlled companies, or home or off-premise employees. This provision was eliminated in the Senate Committee as giving too much discretionary power to the Board, the Committee asserting, in reporting out the Bill on July 8, 1937, that the purpose of original § 6(a) was sufficiently served by the expanded definition of the word 'employ' now incorporated as subsection (g) of the Act,—a definition to which Senator (now Mr. Justice) Black referred as 'the broadest definition that has ever been included in any one Act.' (81 Cong.Rec. 7657.) Subsequent history gives added clarification to Congressional intention. Several bills were introduced in the House in 1939 proposing that the Act should be amended to authorize the Administrator to permit the employment of rural homeworkers at wage rates lower than the statutory minimum. The proposals failed,—the Committee on Labor of the House reporting its view that 'The Act at the present time treats homeworkers just as any other type of employee.' It is apparent from the debates that the purpose of the Congress was not to open the door to the return of the sweatshop system of unpleasant memory.

"The then Assistant Attorney General (now Mr. Justice) Robert H. Jackson, pointed out in testimony before the legislative committee, that the Black-Connery Bill was clearly designed to authorize control over industrial homework practices; 'the factory which sends out and makes use of people in their homes are not exempt just because they are using premises they do not pay rent for.' While he was careful to indicate that probably not all persons designated as homeworkers would be reached by the Bill, in saying that, 'the family that engages in some little commodity which is a homecraft, as you might call it, on its own, would probably not be reached by the Bill,' it was manifest that he had in mind crafts other than those by which articles are processed for manufacturing industries, which furnish the material, instruction and design, and market broadly the completed product."

Fleming v. Palmer, supra, 1 Cir., 123 F. 2d 749, to which we shall refer later in dealing with the cooperative, is also on "all fours" in holding that homeworkers are to be treated as employees under the act. So also is Walling v. Twyeffort, supra, 2 Cir., 158 F.2d 944, in which the Court of Appeals of the Second Circuit held that outside tailors who did piece work for a corporation engaged in custom tailoring, off its premises and without supervision or direction, were employees within the meaning of the act. In Gemsco, Inc. v. Walling, supra, 324 U.S. 244, 65 S.Ct. 605, 607, 89 L.Ed. 921, and Walling v. Wolff, supra, D.C., 63 F.Supp. 605, 607, homeworkers were held subject to the act's provisions, and injunctions forbidding homework in the embroidery trade contrary to a regulation of the administrator were sustained. In the case last cited, Judge Kennedy referred to our statement in the Vogue case that the law of independent contractors was never intended to apply to humble employees of this sort, and added what is manifestly sound: "I would go further and say that the 'law of independent contractors,' so far as the Fair Labor Standards Act is concerned, cannot nullify the will of Congress, and take away the benefits of the statute from pieceworkers in the needle-

work trades, even in the absence of a showing of domination and control."

■ There is nothing to the contrary in Walling v. Portland Terminal Co., 330 U. S. 148, 67 S.Ct. 639, 640, 91 L.Ed. 809, upon which appellees rely. That case merely held that learners or apprentices taking a training course under an agreement that compensation should not be paid them were not to be deemed employees within the meaning of the act; but the court made it very clear that all whose employment contemplated compensation were protected by the act, saying: "This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category. * * * *The Act's purpose as to wages was to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage.* The definitions of 'employ' and of 'employee' are broad enough to accomplish this." (Italics supplied.)

Glenn v. Beard, 6 Cir., 141 F.2d 376, upon which appellees rely, was decided under the Social Security Act, not the Fair Labor Standards Act; and, as we pointed out in United States v. Vogue Inc., 4 Cir., 145 F.2d 609, 613, the decision was rendered prior to the decision of the Supreme Court in the Hearst Publications case, supra. We stated in the Vogue opinion that we were more impressed by the soundness of the decision in the American Needlecrafts case, supra, from which we quoted at length than by that in Glenn v. Beard. Subsequently the Vogue case, along with the American Needlecrafts case and the Twyeffort case were cited with approval by the Supreme Court in the Rutherford Food Corp. case, supra. See 331 U.S. at 729, 67 S.Ct. at page 1476.

There is nothing in the Joint Resolution of June 14, 1948, ch. 468, sec. 2(a), 62 Stat. 438, 42 U.S.C.A. § 1301(a) (6), which sustains the position of appellees. That resolution had relation to the Social Security Act and the definition of employee as contained in that act. The fact that no reference was made to the Fair Labor Standards Act or to the decisions thereunder would clearly indicate that no change in that law as applied by the courts under that act was intended. The same may be said as to the change in definition of employee made by the Labor Management Relations Act of June 23, 1947, 29 U.S. C.A. § 141 et seq., over that contained in the National Labor Relations Act. For the reasons heretofore stated, however, we do not think that employees of the sort here involved, who merely do unskilled, manual labor as a part of a manufacturing process carried on by another, could properly be held to be independent contractors under the rules of the common law, in any event.

■ We come, then, to the question as to whether these homeworkers are taken from under the act by reason of the part played by the cooperative. We do not think so. The work done by the home workers benefits, not the cooperative, but the bag companies. The cooperative has no other interest in it than the dissolved corporation formerly had or than the agents of the bag companies had before the corporation was organized, i. e. it merely handles the distribution and collection of the bags and the payment of the workers for work which benefits the bag companies. The fact that the companies pay the cooperative for stringing the bags instead of making payment direct to the workers themselves is immaterial, since it is understood all around that what is paid to the cooperative shall go to the workers in proportion to the work done; and manifestly the act may not be avoided by an agreement to pay workers collectively instead of individually. *Directly in point* is the decision in Rutherford Food Corp. v. McComb, supra, 331 U.S. 722, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772, where employees were held not to be taken from under the act because of an agreement to pay them collectively for work done. Answering the contention that they were independent contractors as to such work,

the court said: "While profits to the boners depended upon the efficiency of their work, it was more like piece work than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor." The cooperative merely assists the workers in their dealings with the bag companies and its intervention should no more affect their status as employees than if it were a labor union bargaining collectively in their behalf.

Very much in point, also, is our decision in McComb v. Southern Weighing & Inspection Bureau, 4 Cir., 170 F.2d 526, where we held that employees who performed weighing and inspection services for railroads were employees of the railroads within the meaning of the Fair Labor Standards Act, notwithstanding that their wages were paid through a joint bureau maintained by the railroads. The fact that the cooperative is maintained by employees instead of by the employers does not seem to be any just ground of distinction. The determining factor is that the work is done for the employer and that the compensation, although paid through the cooperative, is in reality paid by the employer. See also Walling v. Western Weighing & Inspection Bureau, 7 Cir., 160 F.2d 47.

In point also, when properly considered, is Fleming v. Palmer, 1 Cir., 123 F.2d 749, which held that members of an embroidery cooperative, who did embroidery work for the Palmers, were their employees notwithstanding that they were paid by the cooperative which contracted for the the work. It is true that in that case it was held that the cooperative was controlled by the Palmers; and this is thought to be a ground of distinction. It appears, however, as above stated, that the cooperative here was admittedly organized to avoid the application of the statute, that its most highly paid employees are persons who were formerly employed by the bag companies, that it does nothing which agents of the bag companies did not formerly do, and that its sole function is to distribute and collect the bags and pay the workers with money which the bag companies furnish. Without finding that it is controlled by the bag companies, we think it is clearly nothing more than an agency for the dealings had between them and the homeworkers. Whether it be regarded as an agency of the companies or of the homeworkers seems immaterial, since the economic fact is that the latter are working for the companies, and the control of the agency through which dealings are had cannot change that fact. The case of Walling v. Plymouth Mfg. Corp., 7 Cir., 139 F.2d 178, where there was a partnership of the workers in a small manufacturing plant with a profit sharing agreement, does not support the position of appellees. There the workers were clearly engaged in manufacturing on their own account; here they are merely performing labor for the companies.

 Defendants contend that injunction was properly denied because of a ruling by the Commissioner of Internal Revenue in 1946 to the effect that the relationship between the workers and the bag companies was not that of employer and employee subject to the social security tax. They rely upon the provision of the Portal-to-Portal Act, 61 Stat. 84, 29 U.S.C.A. § 252, that "no employer shall be subject to any liability or punishment" for failure to comply with the requirements of the Fair Labor Standards Act, where he proves that his action was in good faith in reliance upon an administrative ruling of an agency of the United States. They say that the ruling of the Commissioner was a ruling of an agency of the United States within the meaning of this provision, even though not made with respect to the Fair Labor Standards Act, but a companion statute. The answer to this is two-fold. In the first place, the provisions of the Portal-to-Portal Act upon which reliance is placed protect only as to conduct occurring prior to the enactment of that statute, and the conduct here sought to be enjoined continued after the passage of the statute and until the institution of the action and, in the case of Millhiser, is still continuing. In the second place, it is perfectly clear that the provisions relied on protect against liability or punishment for past action and were

never intended to preclude the granting of an injunction against future violations of the law. McComb v. Robert W. Hunt Co., 7 Cir., 172 F.2d 751, 754; Western Union Tel. Co. v. McComb, 6 Cir., 165 F.2d 65, 73; Northwestern Hanna Fuel Co. v. McComb, 8 Cir., 166 F.2d 932, 939.

Contention is made that plaintiff is barred of relief by laches and estoppel; but it is too well settled to admit of argument that these may not be relied upon "to deprive the public of the protection of a statute because of mistaken action or lack of action on the part of public officials". National Labor Relations Board v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, 55; United States v. City and County of San Francisco, 310 U.S. 16, 32, 60 S.Ct. 749, 84 L.Ed. 1050; Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791.

It follows that the injunction prayed should be granted against Millhiser and also against the cooperative, since the latter is assisting Millhiser in violating the act. It would be granted against Chase also, but for the fact that the District Judge dismissed the suit as to that corporation on the ground that it had ceased the practices complained of, had not engaged in them for nearly a year and had no intention of doing so in the future. Under these circumstances it was clearly within the judge's discretion to deny the injunction and dismiss the suit as to Chase, and there is nothing to indicate that the discretion was abused. Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754; United States v. U. S. Steel Corp., 251 U.S. 417, 445, 40 S.Ct. 293, 64 L.Ed. 343, 8 A.L.R. 1121; Walling v. Clinchfield Coal Corp., 4 Cir., 159 F.2d 395, 399; McComb v. Goldblatt Bros., 7 Cir., 166 F.2d 387, 390. The case is entirely different from that presented in Walling v. Haile Gold Mines, Inc., 4 Cir., 136 F.2d 102, where there was admitted likelihood of defendant renewing operations in violation of the act.

As to Millhiser and the Cooperative, therefore, the decree appealed from will be

reversed and the cause will be remanded with direction to grant the injunction. As to Chase, the order dismissing the suit will be affirmed.

Affirmed in part, reversed in part and remanded with directions.