James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff, Appellant,

v.

WHITAKER HOUSE COOPERATIVE, INC., et al., Defendants, Appellees.

No. 5513.

United States Court of Appeals First Circuit.

March 2, 1960.

**363**

Sylvia S. Ellison, Attorney, Washington, D. C., with whom Harold C. Nystrom, Acting Solicitor of Labor, Bessie Margolin, Asst. Solicitor, William Massar, Attorney, Washington, D. C., and Thomas L. Thistle, Regional Atty., Melrose, Mass., were on brief, for appellant.

Philip S. Bird, Waterville, Maine, with whom Bird & Bird, Waterville, Maine, was on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Maine entered for the defendants after a trial before the court sitting without a jury.

The action was brought by the Secretary of Labor under Section 11(a) of the Fair Labor Standards Act of 1938, 52 Stat. 1066 (1938), 29 U.S.C.A. § 211 (a), to enjoin defendants from violating certain provisions of the Act. The complaint, in the parts pertinent to this appeal, alleged that since July 18, 1957 defendant Whitaker House Cooperative, Inc., defendant Philip S. Bird as president of the cooperative, and defendant Evelyn M. Whitaker as general manager of the cooperative, have violated the provisions of Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Act by paying substandard wages, and by failing to keep records and to obtain certificates for homeworkers as required by the regulations issued under the Act. It was conceded by the defendants that the violations had occurred if the Act is applicable. It was stipulated that the only question for the district court's determination was whether the homeworkers, all of whom are members of the cooperative, are "employees" within the meaning of Section 3 of the Act.

The Secretary contended, first, that the cooperative is not a bona fide cooperative controlled by its members, and that, in reality, the individual defendants control the cooperative, hence an employment relationship exists between the homeworker-members and the individual defendants; and second, even if the cooperative is a bona fide cooperative controlled by its members, the Act applies to such a member-controlled cooperative. The district court found that the individual defendants do not control the cooperative or its members, and that the members are not as a matter of economic reality working for the individual defendants. The Court also held that the provisions of the Act are not applicable to a bona fide cooperative controlled by the member-producers.

Findings of facts by the court sitting without a jury shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Fed.R.Civ.P. 52(a), 28 U.S.C.A. The parts of the record cited to us do not establish that the district court was clearly erroneous in its finding that the cooperative was a bona fide cooperative controlled by the member-producers. The record indicates that the members of the cooperative took an active part in the management of the cooperative affairs through the directors. The evidence of various changes in the line of items produced, in the prices charged, in the auditing and bookkeeping procedures, and in the manner of payment in order to adapt to the problem of inventory accumulation, as well as the evidence of a restricted role for Mrs. Whitaker all demonstrate the correctness of the district court's finding of a bona fide cooperative with control by the member-producers.

Fleming v. Palmer, 1 Cir., 1941, 123 F.2d 749, certiorari denied sub. nom. Caribbean Embroidery Cooperative, Inc. v. Fleming, 1942, 316 U.S. 662, 62 S.Ct. 942, 86 L.Ed. 1739, is distinguishable as not being a bona fide cooperative, so that in economic reality the members of the cooperative were in an employee relation to Palmer, and the cooperative

amounted to no more than a manner of paying the workers. In McComb v. Homeworkers' Handicraft Cooperative, 4 Cir., 176 F.2d 633, certiorari denied 1949, 338 U.S. 900, 70 S.Ct. 250, 94 L.Ed. 553 the cooperative was found to be merely a conduit for paying the homeworkers who in reality were employees of the bag companies, and it was held that since an employer-employee relationship existed the Act applied. Here the record revealed that the member-producers were engaged in this enterprise on their own account. See id., 176 F.2d at page 640.

■ The essential factor in determining the application of the Act is whether or not there is an employment relationship, for that is the frame of reference in which Congress placed its mandates. Although the purposes of the Act have been broadly stated as "to exclude from interstate commerce goods produced * * * under conditions detrimental to the maintenance of the minimum standards of living necessary for health and general well-being * * *." United States v. Darby, 1941, 312 U.S. 100, 109, 657, 61 S.Ct. 451, 455, 85 L.Ed. 609 the statute is drawn clearly to apply to employment relationships. See, e. g. Sec. 206, 52 Stat. 1062 (1938), 29 U.S.C.A. § 206.

The Act states:

"(a) 'Person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons.

\* \* \* \* \* \*

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee * * *

"(e) 'Employee' includes any individual employed by an employer.

\* \* \* \* \* \*

"(g) 'Employ' includes to suffer or permit to work. * * *"

52 Stat. 1060 (1938), 29 U.S.C.A. § 203(a), (d), (e), (g).

The language of these sections is not very helpful in deciding the instant case. However, the test of the applicability of the Act has been held to be whether or not as a matter of economic fact there is an employer-employee relationship involved. Fleming v. Palmer, supra; Mitchell v. Nutter, D.C.D.Me.1958, 161 F.Supp. 799.

■ It is clear that a cooperative can have employees. Farmers Reservoir & Irrigation Co. v. McComb, 1949, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672; Puerto Rico Tobacco Marketing Coop. Ass'n v. McComb, 1 Cir., 1950, 181 F.2d 697. But those cases did not involve the question of whether member-producers of a cooperative are considered employees of the cooperative and consequently within the provisions of the Act.

The only case which apparently involved this precise question was the district court decision in Fleming v. Palmer, supra, which was not reported. The district court's refusal there to enjoin the cooperative in regard to its members resulted from the court's conclusion that no employer-employee relationship existed. Id., 123 F.2d at page 751. An analogous conclusion as to a partnership involving approximately one hundred persons was reached by the district court in Walling v. Plymouth Mfg. Corporation, D.C.N.D.Ind.1942, 46 F.Supp. 433, affirmed on other grounds, 7 Cir., 139 F.2d 178, certiorari denied, 1943, 322 U.S. 741, 64 S.Ct. 1144, 88 L.Ed. 1574. In each of those cases, however, the Court of Appeals stated that it was unnecessary for it to decide the question of applicability of the Act to a *bona fide* enterprise.

Additional authority for the conclusion that the Act does not apply to a cooperative such as involved here is found in the statement of the Administrator of the Wage and Hour Division, U. S. Department of Labor, that in certain situations there might be no employer-em-

ployee relationship between a cooperative and its member-workers.[1]

We believe that the instant case presents such a situation. The members of the cooperative individually are the producers of the goods in which the cooperative deals. We agree with the district court's characterization that "the members are engaged, through the Cooperative, in a joint venture for the production and sale of hand-knit infants' outerwear." Id., 170 F.Supp. at page 755. Where the items produced by the members are the units used for measuring each member's share in the cooperative's net income, we think, to quote again from the district court's opinion: "Their interests as members and producers are identical. The work they perform is performed by them as members of the Cooperative, and not as its employees." Consequently, there is no employment relationship present in the production of the items and the Act is not applicable to this cooperative.

Judgment will be entered affirming the judgment of the district court.

WOODBURY, Chief Judge (concurring).

The courts should always be alert to ferret out and ever ready to strike down evasive schemes designed to circumvent the Fair Labor Standards Act. But there is a wide and well recognized difference between evasion and avoidance, and although the Cooperative here may have been organized to avoid the Act, if it is a *bona fide* organization, as we all agree, and not a sham as in Fleming v. Palmer, it seems to me that in economic reality it is an organization engaged in the business of marketing such of the products of its producer-members as they may see fit to submit to it for sale. As a sales agency for its producer-members it may have employees, but however broadly the term may be defined, I do not see how it can be said to be an "employer" with respect to its producer-members. I vote to affirm.

ALDRICH, Circuit Judge (dissenting).

I regret that I am unable to concur in the opinion of the court in this case. I quite agree that the district court's finding that the workers are not employees of the individual defendants, Bird and Whitaker, is based on substantial evidence, and must be sustained. In other

1. 1941 WH Man. 58.
"Application to Cooperatives
"Question: Are cooperatives employers and are members who work for them employees within the terms of the Fair Labor Standards Act.
"Answer (Administrator): The term cooperative is used to describe various types of business organizations differing in form and method of operation. Accordingly, no statement can be made to cover all types of organizations calling themselves cooperatives. However, it may be said generally that no justification can be found for concluding the member-workers of cooperatives, otherwise covered, are not entitled to the benefits of the Act.
"Any doubt which exists must be based on the notion that cooperatives are, in effect, partnerships and that no employer-employee relationship exists between them and the members who work for them. Although it is possible that there may be 'workers' cooperatives in which the interests of the members as workers are in all respects the same as their interests as proprietors and in which the usual characteristics of the employer-employee relationship do not exist, and hence in which the worker-members would not be employees within the meaning of the Act, it is to be noted that cooperatives are commonly separate entities in which the usual characteristics of the employer-employee relationship exist as between them and worker-members.
"Cooperatives are generally in the corporate form with interests distinct from those of their members. Though their workers may be stockholders, as workers they are subject to the usual control and discipline of the corporate employer; they work at the discretion of the cooperative's board of directors or other managerial body. Their concern, as workers, with wages, hours of work and other working conditions, is quite distinct from and may be much greater than their interest, as stockholders, in profits or dividends. * * *"

words, the corporate defendant, hereinafter called Cooperative, must be taken to be member-controlled, and not the alter ego of the individual defendants. But the court errs when it says that it is controlled by "the" members. It is clear that it is controlled by only some of them. A substantial number live outside of the state, in another part of the country, and obviously take no part.* Others live in distant portions of the state, or are old or infirm, or for other reasons do not find it worth their while to attend meetings. Such "members" cannot be said to exercise entrepreneurial skill, and they do not exercise, and in many instances are unable to exercise, any control, effective or otherwise. To them Cooperative simply furnishes an opportunity to do homework, and to dispose of it, that is to say, get paid for it. The workers are told what items to make, are paid at stated rates, and are "expelled" if their work does not measure up to Cooperative's standards. It seems to me that all inactive members differ in no respect from employees of any homework employer.

However, I think the matter lies deeper than this, and that the court is in error even if it could be assumed that all workers had a real vote, and an equal interest in Cooperative's affairs. Cooperative still constitutes an independent entity within the meaning of the Act, whether it be regarded as a corporation, or as an "organized group of persons." 29 U.S.C.A. § 203(a). Indeed, this fact is, concededly, the principal reason for its existence. As the organizational letter pointed out, it serves, among other things, to permit the members "to purchase supplies at wholesale prices," and "to market their products more readily." The testimony emphasized the vital importance of this. In the truest sense Cooperative "suffer[s] or permit[s these ladies] to work." 29 U.S.C.A. § 203(g). If it were not for its existence (or that of some similar central organizational group), with the economic advantages flowing therefrom, no member could work at all. The organization of a group, all of whom will work in a unified direction, is a sina qua non of effective operation. Each member is working for the group, for its advantage, through the medium of Cooperative, and not simply for herself. This seems to me a peculiarly poor case in which to say that the worker "suffer[s] or permit[s herself] to work." Rather, it is Cooperative that is affording individual members the opportunity to work, and paying them for it.

If the thought is that Cooperative is simply a selling organization, because it serves to dispose of the product of its members, I suggest that it is no more a sales organization than is any other employer of homeworkers whose amount of production is self-controlled (but who were restricted to selling to it). Clearly it does much more than dispose of the product. It is true, as the court says, that the "items produced by the members are the units used for measuring each member's share in the cooperative's net income." But of what piecework employee is that not so, if one defines net income as the amount available from gross sales, after deductions, for labor and goods? Is the court saying it makes a difference because there is nothing provided by way of profits to stockholders?

I cannot help feeling that the court has been moved by sympathy with the natural desire of these ladies to make some use of their spare time, in an awareness of the predicament they would be in if the Act were to be held applicable. But there is another side to the coin. These ladies are competing with other producers who must, perforce, respect the standards of the Act. Because of the existence of Cooperative they can, or believe they can, compete with other producers satisfactorily, whereas individually they could not hope to do so. If, for some reason, it is "fair" not to apply the Act to them, such a "fairness" is unfair to those others who must live up

---

* "Each member is entitled to one vote, to be cast in person and not by proxy." 170 F. Supp. 743, 749.

to it. Possibly the court feels that since the members are receiving from Cooperative all the proceeds available, the Act is inapplicable. However, neither economic inability to perform, nor the low commercial value of the work done, are considerations under the Act. Historically, the application of minimum-wage laws always threatens certain fringe, or marginal activities. But it is not for the courts to temper the wind to the legislatively shorn lamb. Mitchell v. Railway Express Agency, D.C.D.Me.1958, 160 F. Supp. 628.

The fact that members exercise a joint voice over Cooperative's management, and elect officers and an executive committee, seems to me irrelevant. If a union were given a voice in management, would its members cease to be employees? If an employee acquires stock in his company, does he cease to be an employee? I do not believe that would be so even if the employees together acquired all of the stock—they would still be working for the corporate entity. Their employment status would remain, even though they might have acquired some additional status. Phrased in terms of the philosophy of the Act, this would be because while collectively they would have a voice, individually they would have none, or none of any consequence. And so here. The Supreme Court has emphasized that "employment" under this Act is broadly defined. United States v. Rosenwasser, 1945, 323 U.S. 360, 362, 65 S.Ct. 295, 89 L.Ed. 301; Rutherford Food Corp. v. McComb, 1947, 331 U.S. 722, 728-729, 67 S.Ct. 1473, 91 L.Ed. 1772, rehearing denied 332 U.S. 785, 68 S.Ct. 29, 92 L.Ed. 368. In a particular instance a court may believe, to quote the court below, that some particular workers do not "require the protection of the Act." My brethren do not pick up this language, but I believe it accurately states their rationale. Perhaps, individually, some in fact do not. But I see no more basis for a court's saying that as the members "suffer or permit" themselves to work they do not require the protection of the Act, than there is

for so determining as to any other worker who "voluntarily" chooses to work. That concept died a quarter of a century ago. I would reverse.